**OFF–THE–WALL PRODUCTS, Plaintiff,**

v.

**HYMAN PRODUCTS, INC., Harry Kronenberg, and Kronenberg Marketing, Inc., Defendants.**

No. 87 CIV. 2916 (PKL).

United States District Court, S.D. New York.

April 12, 1988.

Wyatt Gerber Shoup Scobey & Badie, New York City (James Badie, of counsel), for plaintiff.

Bryan, Cave, McPheeters & McRoberts, New York City (Michael G. Biggers, of counsel), Polster, Polster & Lucchesi, St. Louis, Mo. (Gregory E. Upchurch, of counsel), for defendants.

## OPINION & ORDER

LEISURE, District Judge:

This is an action for injunctive relief and damages arising out of the sale by defendants of alarm clocks that allegedly infringe plaintiff's trademark. Plaintiff manufactures a novelty alarm clock in the shape of a baseball. When the alarm sounds, the user hurls the entire clock against the wall to silence the alarm. The clocks are sold under the trademark "OFF–THE–WALL." Plaintiff alleges that defendant has infringed its trademark by manufacturing and distributing clocks that have a similar appearance and operate in the same manner.

The matter now before the Court is defendants' motion for dismissal for improper venue, or in the alternative for transfer. For the reasons stated below, defendants' motion for dismissal is denied, their motion for transfer is granted, and the Court orders that the case be transferred to the Southern District of California.

## FACTUAL BACKGROUND

Plaintiff Off-The-Wall ("OTW") is a joint venture partnership formed among RGA Accessories, Inc. ("RGA"), a Delaware cor-

poration with offices in New York, New York, Off-The-Wall Products, Inc. ("OTWP, Inc."), a California corporation with offices in California, and Michael C. Copley ("Copley"), an individual residing in La Jolla, California. Plaintiff OTW's place of business is located in New York, New York. Defendant Hyman Products, Inc. ("HPI") is a Missouri Corporation with its principal place of business in St. Louis, Missouri. Defendant Harry Kronenberg ("Kronenberg") is an individual residing in Olivenhaven, California. Defendant Kronenberg Marketing, Inc. ("Kronenberg Marketing") is a California corporation with its principal place of business in Olivenhaven, California.

In or about May of 1986, OTW's predecessor, OTWP, Inc., adopted a trademark in the form and appearance of the baseball clocks and expended money in advertising and developing a market for the clocks.[1] In or about January of 1987, HPI began distributing and advertising clocks similar to OTW's under the name "TIME–OUT." On April 29, 1987, plaintiff filed the complaint in the instant action alleging federal and common law trademark infringement, false designation of origin, misappropriation of trade secrets, unfair competition, disparagement and dilution of trademark.

HPI made its first sale of a TIME–OUT clock in New York no earlier than March 21, 1987. Affidavit of Victor Hseu, sworn to on September 11, 1987, at ¶ 3 (hereinafter "Hseu Aff."). As of July 23, 1987, HPI sold no more than 1,562 clocks in New York City. Hseu Aff. at ¶ 3.[2] As of that date, HPI's total sales of the TIME–OUT clock were 43,903. Id. at ¶ 5. Sales within New York City for the period from March 21, 1987, to July 23, 1987, accounted for approximately 3.6% of the total sales of TIME–OUT clocks. The total dollar value of the sales in New York for that period

was approximately $16,000. Memorandum of Law in Support of Defendants' Motion at 8.

At the request of the Court, an evidentiary hearing was held on January 19, 1988, to update the figures in the Hseu and Bozzay Affidavits, and to provide sales figures that were current. Lawrence Bozzay, Director of Operations of HPI, testified as to sales for the year 1987. Those figures are as follows for the regions listed:

| REGION | SALES IN PIECES | SALES IN DOLLARS |
|---|---|---|
| California | 12,466 | $104,426.50 |
| Missouri | 6,762 | 42,590.00 |
| New York | 5,881 | 50,578.30 |
| New York City | 3,502 | 30,261.30 |
| ALL SALES | 80,407 | 624,341.98 |

Hearing Exhibit D, transcript of hearing on January 19, 1988, at 17–23. Sales of the TIME–OUT clock were discontinued effective January 1, 1988.

HPI has no offices, phone listings or bank accounts in New York. Hseu Aff. ¶ 5. It pays independent contractor sales representatives a commission on products they sell in their respective territories. Kronenberg and Kronenberg Marketing are sales representatives for HPI. Affidavit of Harry Kronenberg, sworn to on August 10, 1987, at ¶ 3. Neither Kronenberg nor Kronenberg Marketing maintains offices or bank accounts in New York. Id. at ¶ 4.

## DISCUSSION

Plaintiff asserts that "[v]enue is founded upon 28 U.S.C. section 1391(b) and (c)." Complaint at ¶ 6. Section 1391(b) provides:

A civil action wherein jurisdiction is not founded solely on diversity of citizenship may be brought only in the judicial district where all defendants reside, or in

---

**1.** Plaintiff's clocks have received widespread national publicity and advertising, including articles in national publications such as Popular Science, Sporting Edge, National Enquirer, Lord & Taylor "Gift Wrap-Ups," as well as in local newspapers such as the New York Post, San Francisco Chronicle and Boston Globe. Plaintiff's clocks have also been featured on

various television shows, including ABC's Good Morning America and Cable News Network.

**2.** Although the Hseu affidavit lists the number at 1,562, another source places the number at 1,563. Affidavit of Larry M. Bozzay, sworn to on September 28, 1987, at ¶ 3. The difference is obviously not material, and, in any event, more current information is now available.

which the claim arose, except as otherwise provided by law.

28 U.S.C. § 1391(b). Section 1391(c) goes on to provide the circumstances under which a corporation is deemed a resident of a given judicial district:

A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

28 U.S.C. § 1391(c).

But plaintiff does not rely on the residence of all defendants as the basis for venue. Even if the Court were to hold that HPI and Kronenberg Marketing are doing business in New York as that term is interpreted in section 1391, Harry Kronenberg is an individual residing in California. Section 1391(b) states, however, that venue is proper "in the judicial district where *all* defendants reside ..." 28 U.S.C. § 1391(b) (emphasis added), and not all defendants reside in this judicial district.

Venue is proper in this district, then, only if the claim arose here. In most cases, it is easy to determine where the claim arises. For example, in a tort action, the place where damage occurs is where the claim arises. In a case of trademark infringement, however, damage occurs wherever the allegedly infringing products are sold. *See Vanity Fair Mills v. T. Eaton Co.*, 234 F.2d 633, 639 (2d Cir.), *cert. denied*, 352 U.S. 871, 77 S.Ct. 96, 1 L.Ed.2d 76 (1956). Yet it is not clear that a claim arises for venue purposes in every district in which some damage occurs, for that would subject defendants to suit in virtually every judicial district in which any allegedly infringing products were sold.

In *Leroy v. Great Western United Corp.*, 443 U.S. 173, 99 S.Ct. 2710, 61 L.Ed. 2d 464 (1979), the Supreme Court addressed the issue of where a claim arises for venue purposes when there is activity in more than one judicial district. In *Leroy*, the Supreme Court dealt with a case in which Great Western, a Delaware corporation with its principal place of business in Texas, made a public offering to purchase two million shares of stock of Sunshine Mining and Metal Company, a Washington corporation with its principal place of business in Idaho. Sunshine also did business in New York and Maryland. Great Western consulted with officials in Idaho, New York and Maryland about compliance with the corporate takeover laws of those states. Idaho officials refused to certify that Great Western had complied with all the requirements of the Idaho takeover laws, and Great Western brought suit in the District Court for the Northern District of Texas, seeking a declaration that the state laws of Idaho, New York and Maryland were invalid insofar as they applied to interstate tender offers to purchase securities traded on the national exchange.

The claims against the New York and Maryland officials were dismissed because those officials never tried to enforce their laws against Great Western. The Idaho defendants argued that the Texas court lacked personal jurisdiction and that venue was improper. The district court found that there was jurisdiction, and that venue was improper under the general venue statute, section 1391(b), but concluded that venue could be sustained under the special venue provision in section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa. A divided panel of the Court of Appeals for the Fifth Circuit affirmed the district court's decision, but disagreed with the district court's conclusion that section 1391(b) did not confer proper venue on the Texas court because the claim arose in Texas. The Supreme Court reversed, and found that neither section 27 of the 1934 Act nor section 1391(b) of Title 28 conferred proper venue on the Texas court.

The Court ruled that "[i]n most instances, the purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial." *Id.* at 183–84, 99 S.Ct. at 2716 (emphasis in original). The Court did not decide whether a claim can arise in more than one judicial district, but found that "it is absolutely clear that Congress did not intend to provide venue at the residence of the plaintiff or to give that

party an unfettered choice among a host of different districts." *Id.* at 185, 99 S.Ct. at 2717. The Court concluded that

> the broadest interpretation of the language of § 1391(b) that is even arguably acceptable is that in the unusual case in which it is not clear that the claim arose in only one specific district, a plaintiff may choose between those two (or conceivably more) districts that with approximately equal plausibility—in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)—may be assigned as the locus of the claim.

*Id.* (footnote omitted) (emphasis in original).

It appears that trademark infringement is an "unusual case" in which it is not clear that the claim arose only in one judicial district. The decision of the Honorable William C. Conner, District Judge of this Court, in *Honda Associates, Inc. v. Nozawa Trading, Inc.*, 374 F.Supp. 886 (S.D.N.Y.1974), is most instructive in this area. *Honda*, although decided five years before *Leroy*, is wholly consistent with the Supreme Court's ruling in that case. In *Honda*, the defendant mailed a total of about twenty mail order catalogs to potential customers in the State of New York. Over a period of four years, defendant received three mail orders from New York for the allegedly infringing goods. The total retail value of the three sales was $37.00, or approximately 1/100 of 1 percent of its total sales of the relevant products.

Judge Conner found that venue is proper where the "weight of contacts" was centered. *Id.* at 890–92. Judge Conner went on to note:

> That is not to say that in trademark cases the "weight of contacts" rule should be applied so literally as to exclude suit in any district other than the one where the greatest volume of in-

fringing activity occurred, but only that the claim should not be deemed to have arisen in a district in which the defendant has had only miniscule contact, and that entirely by mail.

> In other words, ... I am deciding that the right given by Section 1391(b) to sue in any district "in which the claim arose" is not the right to sue where *any* part of the claim, however small, arose. I need not decide which of the other two possible meanings (the *largest* part of the claim or a *substantial* part thereof) is the correct one, since neither would apply here.

*Id.* at 892 (emphasis in original).

■ In light of the Supreme Court's decision in *Leroy*, it is clear beyond peradventure that an action for trademark infringement cannot be maintained in every district in which infringing products were sold. Rather, venue is proper only in districts in which suit may be brought with approximately equal plausibility. Plaintiff's contention in the heading of the major point in his brief, "[i]n a trademark action the sales in a district must be only 'more than miniscule' for the claim to arise in that district" (Plaintiff's Memo at 5) is plainly wrong. *Leroy*, 443 U.S. at 185, 99 S.Ct. at 2717; *see, e.g., Seabrook Foods, Inc. v. Seabrook Brothers & Sons, Inc.*, 495 F.Supp. 792 (S.D.N.Y.1980) (venue improper in this district despite the fact that approximately one sixth of defendants' sales took place in this district).

■ In the instant case, a substantial proportion of sales occurred in the Southern District of New York. 3,502 TIME-OUT clocks were sold in New York City, totaling $30,261.30 in sales. Sales in New York City represent approximately 4% of items sold, and 5% of sales in dollars nationwide. Figures for California and Missouri were not broken down by judicial district,[3] but assuming, *arguendo*, that the

---

**3.** Sales for New York were not broken down by judicial district either, but for ease of consideration, the Court will deem all sales within New York City to have been made within the Southern District of New York. This seems to be an acceptable approach because, although it in-

cludes sales that may have been made in Brooklyn, Queens and Staten Island, which are in the Eastern District, it excludes sales from other counties that are in the Southern District.

The Court does not intend to suggest that this is an appropriate method for allocation of sales

sales figures for those states were equally distributed among the judicial districts, Missouri, with two districts, would have sales of 3,381 items and $21,295 per district; California, with four districts, would have sales of 3,122 items and $26,108.81. Sales in the Southern District of New York would thus be approximately equal to sales in the judicial districts in Missouri and California. This case would then qualify as an "unusual case" in which the claim could be said to have arisen in more than one judicial district. *See Leroy,* 443 U.S. at 185, 99 S.Ct. at 2717.

But even were the Court to make that finding, such a finding alone is not sufficient to support venue in this district. In deciding whether venue is proper in this district, this Court must consider the convenience of the defendants, accessibility of evidence and availability of witnesses. Only if this District is approximately as plausible as another district in terms of those factors will venue be proper in this District. *Leroy,* 443 U.S. at 185, 99 S.Ct. at 2717.

In terms of the convenience of the defendants, it is clear that the Southern District of New York is not the most appropriate forum, nor does it approach Missouri or California in terms of convenience. HPI's officers, employees and key witnesses are located in Missouri, not in New York. Relevant evidence is more accessible in Missouri, because that is where HPI's records are kept. Kronenberg and Kronenberg Marketing are located in California, and their evidence and witnesses are there.

Plaintiff urges that this District is appropriate because plaintiff's headquarters are located here and because some witnesses are located here. But many of OTW's witnesses are California residents, and it appears that Missouri would be no less inconvenient a forum for them than New York, and that California would be most convenient. *Leroy* stated, however, that the convenience of plaintiff was not a factor to be considered in assessing where venue is

proper. This Court therefore concludes that venue is not proper in the Southern District of New York because "in terms of the availability of witnesses, the accessibility of other relevant evidence, and the convenience of the defendant (but *not* of the plaintiff)" the Southern District of New York is not approximately as plausible a forum for suit as the Southern District of California. *Leroy,* 443 U.S. at 185, 99 S.Ct. at 2717.

Because of this conclusion, the Court may dismiss the action or transfer it pursuant to 28 U.S.C. section 1406(a), which provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

28 U.S.C. § 1406(a). The Court finds that, in the interest of justice, the action should be transferred rather than dismissed.

■ This Court finds that transfer to the Southern District of California is most appropriate. The action could have been brought there because all defendants reside there. Kronenberg is an individual residing in the Southern District of California. Kronenberg Marketing does business in that district as provided in 28 U.S.C. § 1391(c). Mr. Bozzay testified at the hearing that HPI has a showroom in Los Angeles with three full-time employees. Transcript of January 19, 1988, hearing at 10–11. HPI is thus doing business in the Central District of California. Venue therefore also lies in the Southern District of California pursuant to 28 U.S.C. § 1392(a), which provides that "[a]ny civil action, not of a local nature, against defendants residing in different districts in the same State, may be brought in any of such districts." Venue therefore lies as to all three defendants in the Southern District of California.

Transfer to that district is especially appropriate under the circumstances that ex-

to each judicial district. In this case, however, such figures merely show that the Southern District of New York is approximately as plau-

sible, in terms of sales volume, as district courts in California and Missouri.

ist in this case, namely, where an action is already pending in the Southern District of California relating to a claim of patent infringement on the same product. Hearing Transcript at 53.

## CONCLUSION

The Court therefore orders the Clerk of this Court to transfer the action to the Southern District of California.

SO ORDERED.