730

David WADE, Thomas Wade, Doris Hegler and Galaxy Inc., Plaintiffs,

v.

OLYMPUS INDUSTRIES, INC., Vitari Sales, Inc., CC. Bottlers of Australia, James R. Eddington, Defendants.

No. 87 CIV. 7906 (PKL).

United States District Court, S.D. New York.

Sept. 19, 1988.

Steven Rosen, New York City, for plaintiffs; Condon & Forsyth, New York City, Carol K. Young, of counsel.

Morrison & Foerster, New York City, for defendants; Joseph Markowitz, of counsel.

## OPINION & ORDER

LEISURE, District Judge:

This is an action for damages based upon alleged contractual breach and *quantum* *meruit* claims, wrongful termination, and slander arising out of the termination of plaintiffs' employment. Before the Court here are motions by Olympus Industries, Inc. ("Olympus"), Vitari Sales, Inc. ("Vitari"), and C.C. Bottlers of Australia ("C.C. Bottlers") to dismiss the action for improper venue, or in the alternative to transfer the case to the Eastern District of Washington pursuant to 28 U.S.C. § 1404. C.C. Bottlers additionally moves to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted, and Vitari and Olympus move to compel arbitration of the claims by plaintiff Galaxy, Inc. For the reasons stated below, the Court grants the motions to transfer the action. It is therefore not necessary to reach the issues regarding personal jurisdiction, sufficiency of the complaint, or arbitration of the Galaxy claims.

## BACKGROUND.

Defendant Olympus is the owner and distributor of "Vitari," a fruit-based food product. Olympus was formed in 1982 by defendant Bill Wade (the brother of plaintiffs David Wade, Thomas Wade, and Doris Hegler) in conjunction with defendant James R. Eddington, a former director of Olympus and a resident of Spokane, Washington.[1] Olympus is incorporated in the State of Washington, with its principal place of business in Spokane, Washington. In 1984, Bill Wade, then president of Olympus, hired plaintiffs Thomas and David Wade to work for Olympus in sales, marketing and distribution capacities.

C.C. Bottlers is a corporation organized under the laws of Australia. In 1986, C.C. Bottlers acquired a controlling interest in Olympus, and currently owns 88% of Olympus' outstanding stock. Vitari, which was formed on October 22, 1986, is a Washington corporation and wholly-owned subsidiary of Olympus. Vitari is licensed to do business in New York, maintains an office

---

1. James R. Eddington is variously described as "Edington," "Jay Edington" "Joseph R. Edington" and "James Eddington" throughout the papers submitted on these motions. *See, e.g.*, Affidavit of David Wade, sworn to on February 24, 1988, ¶¶ 25, 35. It is apparent that there is a single contemplated individual who was instrumental in certain investment activities at Olympus.

in Scarsdale, New York, and markets the Vitari fruit product.

In September 1986, plaintiffs Thomas and David Wade were relieved of their positions at Olympus. Shortly thereafter, the distributorship of Galaxy and Doris Hegler was likewise terminated. This lawsuit ensued.

VENUE.

Jurisdiction in this action is based upon diversity of citizenship. Complaint ¶ 10. Section 1391(a) of Title 28, U.S.C. provides that:

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in the judicial district where all plaintiffs or all defendants reside, or in which the claim arose.

Examination of the parties and claims in this action indicates that venue is not proper in this District.

*1. Where the Parties Reside.*

It is not alleged that any of the plaintiffs reside in this judicial district. David Wade is a resident of the state of Florida. Thomas Wade is a resident of either the state of Ohio or the state of Washington. Complaint ¶ 2. Doris Hegler is a resident of the state of South Carolina. Galaxy Inc. is a South Carolina corporation with its principal place of business in Simpsonville, South Carolina. Affidavit of David Wade, sworn to on February 24, 1988 ("D. Wade Affidavit"), ¶ 20.

[1] Plaintiffs contend that venue is proper in this District because all of the defendants can be said to reside in New York. This contention is unfounded; even a cursory look at the undisputed facts relative to the defendants' residence reveals that they do not all reside in this District.

Of all the defendants, only Vitari can unequivocally be said to "reside" in New York. On June 8, 1987 Vitari became licensed to do business in New York. Affidavit of Michael J. Jemison, sworn to on January 16, 1988 ("Jemison Affidavit"), ¶ 15. A corporation licensed to do business or doing business in a judicial district "re-sides" there for venue purposes. 28 U.S.C. § 1391(c).

Defendant Olympus is alleged by plaintiffs to be "doing business" in New York through its wholly owned subsidiary Vitari, and thus residing in New York under 28 U.S.C. § 1391(c). D. Wade Affidavit ¶¶ 21, 28; Complaint ¶ 5. Vitari is a wholly-owned subsidiary of Olympus, and four of five board members of each corporation are identical. The two boards have separate board meetings, however, and observe formalities and separate corporate existence. Affidavit of Walt Mead, sworn to on March 7, 1988 ("Mead Reply Affidavit"), ¶ 18. Olympus "directs its sales efforts" of the fruit-based dessert product through Vitari. Orders are made directly to Olympus, and Olympus oversees shipping and distribution of its products. Affidavit of Walt Mead, sworn to on January 12, 1988 ("Mead Affidavit"), ¶ 3.

■ Where the separation between a parent and subsidiary corporation is real, the activities of the subsidiary will not automatically subject the parent to jurisdiction in the subsidiary's forum. *Cannon Manufacturing Co. v. Cudahy Packing Co.,* 267 U.S. 333, 335–37, 45 S.Ct. 250, 251, 69 L.Ed. 634 (1925). The *Cannon* rule respecting separate corporate identities is a useful guide in determining questions of venue as well as questions of jurisdiction. *Allis–Chalmers Manufacturing Co. v. Gulf & Western Industries,* 309 F.Supp. 75, 78 (E.D.Wis.1970). It is possible that Olympus could utilize its subsidiary Vitari, and be so intertwined with that subsidiary, that the corporate distinctions should be ignored, and Olympus deemed to be "doing business" in New York and residing there for venue purposes. It is not clear on the essentially undisputed facts, however, that this is the case.

■ Even if Olympus did in fact "reside" in New York through Vitari, this District is not a proper venue based on the defendants' residence. Plaintiffs make the same general type of argument regarding C.C. Bottlers' residence as they do for Olympus, namely that C.C. Bottlers so dominates its subsidiary Olympus, and therefore Vitari,

that it does business and resides in New York under 28 U.S.C. § 1391(c). The basis of this contention is that the directors of Olympus and Vitari owe primary allegiance to the parent C.C. Bottlers, and are therefore controlled by the parent. This postulated control is said to subject C.C. Bottlers to jurisdiction and venue in this District. Complaint ¶ 7; D. Wade Affidavit ¶ 12. An alleged series of meetings by board members of C.C. Bottlers in New York is also said independently to constitute "doing business" for venue, and for personal jurisdiction under N.Y.C.P.L.R. § 301. Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion to Dismiss ("Mem. in Opp."), at pp. 14, 19–20.

Plaintiffs rely heavily on *Frummer v. Hilton Hotels International, Inc.*, 19 N.Y. 2d 533, 281 N.Y.S.2d 41, 227 N.E.2d 851 *cert. denied sub nom. U.K. Hilton Hotels v. Frummer*, 389 U.S. 923, 88 S.Ct. 241, 19 L.Ed.2d 266 (1967) to establish that C.C. Bottlers does business through Olympus and Vitari in New York for purposes of the New York long arm statute, and then implicitly for venue residence purposes.[2] Plaintiffs' reliance on *Frummer* is misplaced. In *Frummer*, the commonly owned reservation service of a chain of hotels subjected the London Hilton ("Hilton U.K.") to personal jurisdiction through the English hotel's use of the service. The "significant and pivotal factor" in the New York Court of Appeals' determination that the reservation service was an agent of Hilton U.K. was that the business of the foreign corporation and agent were the same. If Hilton U.K. had been present itself it would have conducted the same activities as the reservation service. *Id.* 19 N.Y.2d at 537, 281 N.Y.S.2d at 44, 227 N.E.2d 851. Olympus and Vitari market and manufacture "Vitari," a patented fro-zen fruit dessert product. C.C. Bottlers is involved in soft drink bottling and beverage distribution. The business of C.C. Bottlers is distinct from that of Olympus and Vitari. Jemison Affidavit ¶ 8.[3]

Plaintiffs' contention is basically that a multinational corporation invariably controls its subsidiaries, and that such control is tantamount to "doing business" for both the New York long arm and federal venue requirements. Mem. in Opp. at p. 13. Such a broad characterization would make every multinational corporation subject to jurisdiction and venue wherever it had a subsidiary, regardless of the relative activities or control exerted by the parent over the subsidiary. This is not consistent with contemporary notions of jurisdiction or venue, and the policies underlying those principles.

■ Little need be said about C.C. Bottlers residing in New York for § 1391(c) purposes independently, apart from its ownership interest in Olympus. C.C. Bottlers does not maintain any offices, bank accounts, or telephone listings in New York. It does not itself employ any personnel or solicit business in New York. Jemison Affidavit ¶¶ 4, 5. The only independent C.C. Bottlers activities in this District are occasional business meetings in New York. It is doubtful that these alone would even constitute sufficient minimum contacts to satisfy due process requirements, *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), much less constitute "doing business" for § 1391 residence.

■ Plaintiffs' contentions are most weak regarding the defendant Eddington. Not only do plaintiffs ignore the presence of Eddington as a defendant and important

---

**2.** Plaintiffs assume without discussion that a finding of "doing business" sufficient for the state long arm statute is equivalent to the "doing business" requisite of 28 U.S.C. § 1391(c). Although the inquiries are similar, the Court notes that there are conceptual problems with equating the state law *in personam* jurisdiction requirements with venue, a matter of federal law. *See, Bastille Properties, Inc. v. Hometels of America, Inc,* 476 F.Supp. 175, 179 (S.D.N.Y.1979); 15

Wright, Miller & Cooper, Federal Practice and Procedure § 3811.

**3.** Plaintiffs claim that because both Olympus and C.C. Bottlers are involved in distributing "food products" they are involved in the same business. D. Wade Affidavit ¶ 21. This characterization is too broad; there are innumerable distinct activities that could be described as relating to "food products."

witness, *see*, D. Wade Affidavit ¶¶ 12, 14, but the arguments made concerning Eddington evince a fundamental misunderstanding of the federal venue provisions.

Eddington resides in Spokane, Washington. He has not served notice of appearance in this action, and it is not clear that he could be compelled to testify in the Southern District of New York or that he is subject to this Court's jurisdiction. *See, Commercial Solvents Corp. v. Liberty Mutual Insurance Co.*, 371 F.Supp. 247, 250 (S.D.N.Y.1974) (subpoena power over important witnesses an "important consideration" in determining whether to transfer venue).

Plaintiffs' only response to the issue of defendant Eddington's residence is to assert that "[t]here is no reason to take any consideration of factors relating to him," and to assert that "it is really up to the plaintiff[s] to determine if they desire to proceed" against defendants that are subject to the jurisdiction of this Court. Mem. in Opp. at p. 28.

It is not up to plaintiffs to decide whether the federal venue provisions will apply to their actions. The language of 28 U.S.C. § 1391(a) could in this respect not be more clear; diversity actions may "be brought only in the judicial district where all plaintiffs or *all* defendants reside, or in which the claim arose." If every diversity case commenced in an improper forum were automatically severed as to those defendants that did not reside in the district, the federal transfer and venue provisions would be meaningless.

### 2. Where the Claim Arose.

■ Venue would alternatively be proper in this District if the claim arose in New York. 28 U.S.C. § 1391(a). Plaintiffs make only one contention in this regard that is worthy of discussion. Although not stated in the complaint, plaintiffs allege in their supporting affidavit that the decision to terminate the plaintiffs was made at an unspecified board meeting in New York. D. Wade Affidavit ¶ 27. This assertion is vigorously contested in the supporting affi-

davit of defendants. Reply Affidavit of Walt Mead ¶¶ 2–4.

Even if a "decision" regarding the plaintiffs' employment were made at a meeting in New York, it does not automatically follow that the claim "arose" there. The question of where the claim arose can be susceptible to differing interpretations. *See, e.g., Moyglare Stud Farm v. Due Process Stable, Inc.*, 562 F.Supp. 289, 291 (S.D.N.Y.1983). The situation here, however, is not close.

The Wades' contracts of employment were entered into in Spokane, Washington. *See,* Letters From Bill Wade to Thomas and Davis Wade, Attached as Exhibit E to Mead Reply Affidavit. Upon entering into the contracts, plaintiffs filed appropriate employment forms in Washington. *See,* Exhibits B and C, Attached to Mead Affidavit. Plaintiffs applied for unemployment compensation in Washington. *See,* Mead Reply Affidavit ¶ 5; Exhibits C and D Attached to Mead Reply Affidavit.

It is apparent that the injury occurred, and the cause of action arose, in Washington. An action for wrongful termination involves the type of injury which "typically occurs in the district in which the plaintiff lost, or was unable to obtain, employment." *Quinn v. Bowmar Publishing Co.*, 445 F.Supp. 780, 783 (D.Md.1978) (age discrimination action).

Even if there were a board meeting in New York where a termination decision was made, as plaintiffs claim, their assertion that the claim arose in this District remains groundless. The most that plaintiffs could argue would be that their claim is an "unusual case" where the injury can occur in more than one district. *Leroy v. Great Western United Corp.*, 443 U.S. 173, 185, 99 S.Ct. 2710, 2717, 61 L.Ed.2d 464 (1979). In such situations the courts typically employ a "weight of the contacts" approach. *Leroy,* 443 U.S. at 185, 99 S.Ct. at 2717; *Off–The–Wall Products v. Hyman Products, Inc.*, 684 F.Supp. 36, 38 (S.D.N.Y.1988); *Honda Associates v. Nozawa Trading Co.*, 374 F.Supp. 886, 891 (S.D.N.Y.1974). From the above, it is clear that essentially all of the contacts are with the

state of Washington, and the bulk of the claim arose there. The right to sue in any district where the claim arose "is not the right to sue where any part of the claim, however small, arose." *Honda*, 374 F.Supp. at 892.

TRANSFER OF THE ACTION.

Venue is not proper in this District. The plaintiffs' choice of forum, normally entitled to some deference, is given less weight in cases like the present where there is an "absence of any contact by the forum state with the transactions underlying the cause of action." *Foster v. Litton Industries, Inc.*, 431 F.Supp. 86, 87 (S.D.N.Y.1977). *See also, Anchor Savings Bank v. Transamerica Insurance Company*, 634 F.Supp. 398, 399 (S.D.N.Y.1986).

As indicated above, it is apparent that the cause of action arose in Washington. Defendants Olympus, Vitari, and James R. Eddington are residents of Spokane, Washington. Defendant C.C. Bottlers is probably present in Washington, and in any event has consented to jurisdiction in that state. Jemison Affidavit ¶ 18; C.C. Bottler's Memorandum of Law in Support of Motion to Dismiss, at p. 13. A large number of material witnesses are located in the Eastern District of Washington, and subject to compulsory process there. Mead Affidavit ¶ 12. *See, Commercial Solvents Corp. v. Liberty Mutual Insurance Corp.*, 371 F.Supp. 247, 250 (S.D.N.Y.1974). Section 1406(a) of Title 28, U.S.C. provides:

> The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.

The Eastern District of Washington is clearly a district in which this action could have been brought. The Court finds that it is in the interest of justice to transfer this action to the Eastern District of Washington.

## CONCLUSION

The motions by defendants Olympus, Vitari and C.C. Bottlers to transfer the action to the Eastern District of Washington are granted. C.C. Bottlers' motions to dismiss for improper venue, lack of jurisdiction and sufficiency of the complaint are therefore denied, as are Olympus and Vitari's motions to dismiss and compel arbitration.

SO ORDERED.