OPINION OF THE COURT
Jane S. Solomon, J.
In these six CPLR article 75 proceedings, petitioners, Merrill Lynch, Pierce, Fenner & Smith, Inc. (Merrill Lynch) and brokers affiliated with it, seek to stay permanently the arbitration proceedings commenced by the respondents, who are petitioners’ customers, before either the National Association of Securities Dealers, Inc. (NASD) or the New York Stock Exchange, Inc. (NYSE). In all cases, the petitions allege that some or all of the underlying investments are ineligible for arbitration because they are over six years old and, in some instances, that the claimants cannot recover punitive damages and/or attorneys’ fees in arbitration. Respondents all seek dismissal on the ground that this court lacks personal jurisdiction over them. Because of the common issue and its analysis, I am rendering one decision in these otherwise separate proceedings.
There is no question that, on the merits, Merrill Lynch would succeed in staying arbitration when, as with respondents, all are parties to agreements with Merrill Lynch under which New York law is to govern their disputes, and which require arbitration to resolve such disputes before either the NASD or the NYSE. This is because the issue of eligibility *247 under the NASD and NYSE rules[1] is for the courts to apply and, in general, the event which triggers the six-year period is the investment in, or the purchase of, the relevant security. (Merrill Lynch, Pierce, Fenner & Smith v DeChaine, 194 AD2d 472 [1st Dept], lv denied 82 NY2d 657 [1993]; Matter of Prudential Bache Sec. v Archard, 179 AD2d 652, 653 [2d Dept], lv denied 80 NY2d 754 [1992]; Merrill Lynch, Pierce, Fenner & Smith v Ohnuma, 161 Misc 2d 423 [Sup Ct 1994, Solomon, J.].) Further, the New York Court of Appeals has held that arbitrators have no power to award punitive damages because the private award of noncompensatory damages violates the State’s public policy (Garrity v Lyle Stuart, Inc., 40 NY2d 354 [1976]); this rule is considered part of New York’s substantive law. (See, Stewart, Punitive Damages in Arbitration, NYLJ, July 21, 1994, at 1, col 1.) Finally, New York’s statutory law, CPLR 7513, prevents the award of attorneys’ fees in arbitration, unless they are provided for in the agreement to arbitrate.
Before the merits can be reached, however, the threshold question is whether this court has personal jurisdiction over the respondents based on the choice of law clauses, combined with their effectuation of the agreements to arbitrate by the mailing of a written submission to a New York City office of either the NASD or the NYSE.[2] Many of my colleagues have reviewed this dispute. The greater number have concluded that the answer is yes because the forum selection clause and the mailing of the initiating documents implies a consent to jurisdiction; others disagree.[3] There is no clear appellate guidance.[4] I conclude that the terms of the arbitration agreements and respondents’ compliance by mailing documents to desig *248 noted New York City offices are not, by themselves, sufficient to confer personal jurisdiction over the respondents’ objections.
FACTS
Merrill Lynch, a securities broker registered with, inter alla, the Securities Exchange Commission, the NASD and the NYSE, is a Delaware corporation with its principal place of business in New York City. Respondents are noncommercial customers of Merrill Lynch and nondomiciliaries of New York. It is undisputed that respondents have not transacted business in New York on a regular basis. Moreover, their investments were made through account representatives who worked at Merrill Lynch branch offices near the customers’ residences, and account statements came from the local Merrill Lynch offices. In addition, the investments which are the subjects of the respondents’ grievances with petitioners tend to be limited partnership units or investment funds, not publicly traded stocks or bonds which might suggest a nexus with a stock exchange located in New York.
The provisions governing these disputes are in substantially identical language and are contained in either, or both, cash management account or separate brokerage account agreements. That is, they are to be "governed,” "construed” or "enforced” under New York law, and the customer has the election to seek arbitration at either the NASD or the NYSE. The agreements are silent about where the arbitration might be held and how arbitration is commenced, other than to state that claims are to be sent to Merrill Lynch, at no specific address; in actuality that is never done. The NASD Code and the rules of the NYSE do not designate New York as a forum; they each state that the place and time of the arbitration hearing will be decided by the Director of Arbitration, with whom submissions are first filed. (NASD Code §§ 13, 26; NYSE rule 613.)
RESPONDENTS AND THEIR INVESTMENTS
Barbara J. Barnum (Barnum) is a Florida resident who maintained her account at a Merrill Lynch office in Sarasota, Florida. The apparent broker, petitioner Alan Morris, is a Florida resident. Barnum seeks rescission and damages in connection with two $25,000 investments made in 1987 in Merrill Lynch proprietary limited partnerships. The NASD *249 designated Tampa, Florida, as the anticipated hearing location.
Franklyn E. McDonald, Trustee/Franklyn E. McDonald Trust (McDonald), a Florida resident, had his account at a Merrill Lynch office in Florida, where petitioner, James M. Thompson, was employed. McDonald seeks damages and attorneys’ fees in connection with investments in two real estate limited partnerships, one of which, for $50,000, was made outside the six-year eligibility period. The NASD response indicated that the anticipated arbitration was to be in Tampa, Florida.
Mao Ta Chen and Yeng Feng Shieh Chen (the Chens) reside in Taipei, Taiwan, Republic of China. By a power of attorney, their daughter, resident in San Jose, California, commenced arbitration on their behalf. When in the United States, the Chens stay in Claremont, California. Petitioner Albert Yuan (Yuan) is employed at Merrill Lynch’s Pasadena, California, office. Based on Yuan’s advice to them in Chinese, the Chens, who speak little English, made a $40,000 limited partnership investment in 1986. They seek to recover the amount invested, plus interest. The NASD has not yet chosen an arbitration location and asked for more information on the subject.
The Estate of Thelma G. Webb (Webb) is the estate of a lifetime resident of Wilson County, North Carolina. Webb and her husband dealt exclusively with the Merrill Lynch office in Wilson County for 40 years. After her husband died in 1980, Webb relied on the advice of petitioner John G. Bilke (Bilke), who is a resident of North Carolina. Respondent seeks rescission, compensatory and punitive damages, and attorneys’ fees in connection with transactions involving the disposition of the inherited portfolio between 1982 and 1992, many of which resulted in investments in limited partnerships and other securities which allegedly led to losses of approximately $460,000. The NASD indicated that the anticipated location of the arbitration is Raleigh, North Carolina.
Valerie A. Burhans (Burhans) is a 73-year-old widow who resides in Grand Rapids, Michigan. Her sales agent, petitioner James Maclachlan, also resides in Michigan. Burhans’ claims arise out of investments, made from 1985 to 1987, in 13 Merrill Lynch sponsored limited partnerships. She seeks rescission, $300,000 in losses, attorneys’ fees and exemplary and punitive damages. The NASD designated Detroit, Michigan, as the likely arbitration location.
*250 Mr. and Mrs. Robert Connote (the Connotes), Mrs. Carolyn Campbell (Campbell), Dr. and Mrs. Richard Cooper (the Coopers), Mr. and Mrs. Robert Barchman (the Barchmans), Mrs. Evelyn Fasbender (Fasbender), and Dr. and Mrs. William D. Reinweim (the Reinweims), all made investments through Merrill Lynch’s Davenport, Iowa, office. Their broker was petitioner, Laurie Jones Canady (Canady), who is a resident of Iowa. Petitioner Steven P. Lyders is the branch manager of Merrill Lynch’s Davenport office and a resident of Iowa. The Davenport investors filed their claims together and Merrill Lynch sought relief against them collectively in one proceeding.
The Connoles, who have resided in Davenport for 53 years, opened their account with Merrill Lynch in 1983 and invested $129,461. Campbell, a 73-year-old widow and lifetime resident of Davenport, invested $43,131 in 1986. The Coopers lived in Iowa for 35 years until they moved to Miami, Florida, five years ago. They invested $85,000 between 1982 and 1990. The Barchmans are 50-year residents of Davenport and opened a $28,794 account with Merrill Lynch in 1984. Fasbender is a 76-year-old widow and lifetime resident of Davenport who invested $36,873 in 1982. The Reinweims are and have been residents of Moline, Illinois, for the past 36 years; they transferred their $212,000 account from the Houston office of Merrill Lynch to its Davenport office in 1981.
The Davenport respondents’ statements of claim refer to their investments in "Municipal Investment Trusts,” "Corporate Investment Trusts,” "equities,” and "mutual funds on the margin,” and seek compensatory and punitive damages and attorneys’ fees. These were the only respondents who filed with the NYSE, which in response to a request that the arbitration be held in Davenport, Iowa, chose Chicago, Illinois, instead.
DISCUSSION
Under constitutional due process principles, a court must have a jurisdictional basis before exercising its powers over a party. (Kreutter v McFadden Oil Corp., 71 NY2d 460, 466 [1988].) In general, New York courts may obtain personal jurisdiction over a party based on (1) domicile in New York (CPLR 301), (2) "consent” to jurisdiction in New York, or (3) *251 the long-arm statute (CPLR 302).[5] Under CPLR 302 (a) (1), a party who never physically enters New York will be held to "transact business” in the State when its activities here are purposeful and a substantial nexus exists between the transaction and the claim asserted. (Kreutter v McFadden Oil Corp., supra, at 467.)
The foundation for the position that respondents have consented to jurisdiction is the 1977 decision of the United States Court of Appeals for the Second Circuit in Merrill Lynch, Pierce, Fenner & Smith v Lecopulos (553 F2d 842 [2d Cir 1977]), on which all subsequent decisions upholding that conclusion depend. In Lecopulos, Merrill Lynch sought to bring its customer, a Greek citizen, into a New York court to compel arbitration based on the parties’ agreement to arbitrate in accordance with the constitution and rules of the NYSE. The Lecopulos court, after noting that Lecopulos’ trading transactions occurred in New York, agreed with Merrill Lynch’s argument that "the agreement to resolve disputes by arbitration in New York constituted consent to personal jurisdiction in New York.” (Supra, at 843, 844.)
Petitioners argue that, as in Lecopulos (supra), the respondents here consented to jurisdiction in this court when they chose to arbitrate before the NASD or NYSE, which they characterize as New York-based entities. Petitioners’ position has been accepted by many courts, including this one. (See, e.g., Merrill Lynch, Pierce, Fenner & Smith v Noonan, 1992 WL 196741 [SD NY, July 31, 1992, Kram, J.]; Kidder, Peabody & Co. v Marvin, 161 Misc 2d 12; Merrill Lynch, Pierce, Fenner & Smith v Burke, NYLJ, Mar. 3, 1994, at 25, col 4 [Sup Ct, NY County, Solomon, J.].)
Based upon the exhaustive submissions and arguments made in these six matters, and notwithstanding my earlier decision, I find that the respondents did not consent to the jurisdiction of the courts of this State, and that the Lecopulos holding is inapposite to these proceedings. I draw this conclusion for many of the reasons articulated by the Honorable Martin B. Stecher, a Justice of this court, in Merrill Lynch v Samples (index No. 13128/92, Dec. 14, 1992, Sup Ct, NY County), a case involving an arbitration agreement like those *252 at issue here. Most simply, the arbitration provision, on which petitioners rely, does not specify that arbitration is to be held in New York, a finding made in Lecopulos (supra) and the apparent predicate for that decision. Mention of New York only in the choice of law provision does not, by itself, confer jurisdiction. (Burger King Corp. v Rudzewicz, 471 US 462, 482 [1985]; see also, Merrill Lynch v Samples, supra ["That the parties have chosen New York law as governing does not mean that the applicable law must be applied in New York”] [citation omitted].)
Although Lecopulos’ agreement with Merrill Lynch no more explicitly mentioned New York as the arbitration forum than respondents’ agreements do, he was obligated to arbitrate before the NYSE when New York, may have been the only situs then used. Moreover, Lecopulos initiated his Merrill Lynch connection in Athens with a London subsidiary of Merrill Lynch; he opened a commodity account at the London offices where $500,000 was deposited, and quickly traded, at a loss, in sugar futures contracts. In the event, Merrill Lynch sued him in this court to recover a $106,000 debit balance and Lecopulos removed the action to the United States District Court based on the jurisdictional amount and diversity of citizenship. It was in Federal court that Merrill Lynch sought to stay its own action and to compel arbitration.
The factors underlying the Merrill Lynch dispute with Lecopulos — a large investment, even by today’s inflated standards, for trading in international contracts with multinational connections, which culminated with litigation begun by Merrill Lynch — are dramatically distinguishable from those of the modest consumer-investors here whose arbitration commitments are in many cases found in the text of cash management account agreements with a domestic company having hundreds of offices throughout the country, and where the investors are obligated to arbitrate through entities which, almost 20 years after Lecopulos (supra), for their institutional convenience, only filter claims through New York offices. In Lecopulos, furthermore, it was assumed that the only logical judicial forum to resolve the dispute was a New York court. (See, Merrill Lynch v Samples, supra ["in Lecopulos * * * New York is the undisputed forum for arbitration, giving rise to jurisdiction of the courts of the forum”] [citations omitted].)
While Lecopulos was a foreign national, the respondents here are customers who live in the United States and are subject to, at a minimum, the jurisdiction of their home *253 courts. In addition, the respondents certainly were not in a position to know that they were "consenting” to jurisdiction in New York when they agreed to arbitrate pursuant to the rules of the NASD and NYSE. As mentioned above, the rules of these organizations do not provide that New York will be the arbitration location. Likewise, when respondents mailed their initiating documents to New York, which the arbitration forum required them to do, they did not acknowledge that the arbitration would occur here, and cannot be said to have agreed to that in light of the now common practice for such hearings to be held locally. (See, Merrill Lynch v Samples, supra [where Merrill Lynch conceded that the practice of the NASD is to select arbitration sites at various offices].)
The court also does not have jurisdiction under New York’s long-arm statute. "[I]n order to constitute a transaction of business in New York the defendant must have committed some act by which he purposefully availed himself of the privilege of conducting activities in this State, thus invoking the benefits and protection of our laws.” (Abbate v Abbate, 82 AD2d 368, 383 [2d Dept 1981] [citation omitted].) Here, the respondents’ only contact with the State, their mailing of claims statements to New York City, was a requirement, not a voluntarily chosen benefit. In addition, the " 'quality and nature’ ” of this contact is not such that "it is 'reasonable’ and 'fair’ to require [them] to conduct a defense in [this forum].” (Riblet Prods. Corp. v Nagy, 191 AD2d 626, 627 [2d Dept 1993] [citations omitted]; see also, Merrill Lynch v Winet Fin. Corp., index No. 25323/92, July 30, 1993, Sup Ct, NY County, Tom, J. [holding that "the filtering of the Statement of Claim through the NASD’s New York office” is insufficient to satisfy New York’s long-arm statute].)
Finally, as Justice Stecher remarked in Samples (supra), "[i]f Merrill Lynch, a financial corporation which does business in every state of the union, wants to force its customers, no matter how far away, to litigate their claims only in New York, let it insert an express provision to such effect in the contracts it has its customers sign.”
In the six months that CPLR article 75 proceedings involving disputes between broker dealers and their customers have been referred regularly to me, I have learned of the practical difficulties of requiring individuals from across the country to defend fundamentally modest claims in a New York court. Their options are: incur the expense of hiring New York counsel, usually by expecting their home attorney to locate *254 and retain one on short notice; take their chances and appear pro se, as the attorney-in-fact for the Chens did here; or have their original attorney respond for them. (I have permitted the parties to agree to waive oral argument and not insisted that New York counsel participate.)[6] These realities highlight the fundamental unfairness of subjecting respondents and those similarly situated to jurisdiction in New York courts in the absence of their true consent.
This is not to say that the overreaching of counsel to some claimants, who must know of the NASD and NYSE eligibility rules and New York law on punitive damages and attorneys’ fees, is not regrettable. However, it must be expected that arbitrators, or Judges and Justices presiding in sister States, will properly and honestly apply our law when it has been chosen by their citizens.
Merrill Lynch is not without recourse as the result of this decision. It can seek relief in a customer’s home State prior to being required to participate in arbitration, press its objections before arbitrators or, as was suggested before, it can revise its customer agreement to spell out in advance that consent to jurisdiction in the New York courts is a condition of opening a customer account in any of the 50 States of the United States or its territories.[7]
CONCLUSION
Because this court lacks jurisdiction over respondents, the cross motions are granted, all stays are vacated, and each petition is dismissed.

. Section 15 of the NASD Code of Arbitration Procedure and rule 603 of the Arbitration Rules of the NYSE provide, in relevant part, that: "No dispute, claim, or controversy shall be eligible for submission to arbitration under this Code, where six (6) years have elapsed from the occurrence or event giving rise to the act or dispute, claim or controversy.”

. The NASD is headquartered in Washington, D.C. but all arbitration claims are filtered through its New York office. The NYSE is in New York for all purposes.

. Copies of as many as 25 decisions were submitted, none officially published.

. The recent First Department decisions in Matter of Prudential Sec. (Mandt) (205 AD2d 424 [1994]) and Matter of Shearson Lehman Bros. v Kramer (205 AD2d 457 [1984]) are not on point. The first apparently concerns an employee of the broker who relied on the CPLR, and the second relates to arbitration before the American Arbitration Association.

. CPLR 302 (a) provides for personal jurisdiction over a nondomiciliary whose acts are performed or have an effect in New York. Here, only CPLR 302 (a) (1) — which permits the court to exercise jurisdiction over a nondomiciliary who "transacts any business” in New York — is relevant.

. Not all courts do this. (See, e.g., Darr v Toland, index No. 20303/93, Jan. 19, 1994, Sup Ct, Westchester County, Coppola, J. [noting that the application to stay arbitration was "technically unopposed” where respondents, residents of Arkansas, were represented by "counsel not licensed to practice law in New York”].)

. One prior proceeding involved a customer in Puerto Rico.