Richard **LAUNER**, Plaintiff,

v.

**BUENA VISTA WINERY, INC., Racke USA, and Racke GmbH,** Defendants.

No. CV–95–1980 (DGT).

United States District Court, E.D. New York.

Feb. 6, 1996.

---

Salon, Marrow & Dyckman, New York City, for plaintiff.

Putney, Twombly, Hall & Hirson, New York City, Littler, Mendelson, Fastliff, Tichy & Mathiason, Washington, DC, for defendants.

## ORDER

TRAGER, District Judge:

Defendants bring this motion to dismiss for lack of personal jurisdiction and improper venue. Plaintiff has brought an action in the Eastern District of New York claiming employment discrimination based on religion in violation of Title VII, violation of ERISA, as well as tort claims under New York City Administrative Code and the New York State Human Rights Law.

### Background

#### (1)

Defendant, Buena Vista Winery, Inc., is a California corporation with its principal place of business in Sonoma, California. Defendant Racke USA is a division of Buena Vista and is incorporated in California with its principal place of business in Sonoma, California. Its parent corporation is defendant Racke GmbH whose corporate residence is in Bingen, Germany.

Presently, none of the above mentioned companies has an office in New York. Nor are they licensed to sell wine, to offer it for sale, or to solicit or to accept any order for the sale of wine in New York. Nor do they have any employees in New York. Aff. of Marjorie Dworak at ¶ 3. Defendant Buena Vista does have winery representatives contacting wholesalers in New York, but they cannot take orders.

Since 1991, Buena Vista has contracted with Proprietary Brands, Inc., an independent corporation neither owned nor controlled by any of the defendants as a brand agent for wines sold in New York. "Proprietary is the company that conveys title to anyone who purchases Buena Vista wines in the state of New York." Aff. of Dworak, dated 7/28/95, ¶ 5. Proprietary invoices the wine purchased and collects payment from wholesalers and retailers and pays state taxes on these sales. Any wine purchased in New York through Proprietary is shipped by Buena Vista in Proprietary's name from Sonoma, California.

According to Launer, "Plaintiff is a resident of the State of New Jersey, and parttime resident of the State of New York, and worked in the greater metropolitan New York area for defendants maintaining an office within this district. . . ." Decl. of Maione at ¶ 9. The complaint alleges that "Plaintiff . . . owns property [in] . . . Long Island City, New York, although he is a resident of the State of New Jersey." Compl. at ¶ 7. When the plaintiff was employed by Buena Vista, the winery also employed one Anne Marie Harrison as a division manager of New York and New Jersey whose office was located in New York. In addition, plaintiff, who was the vice president of sales for the Eastern region, had an office located in Long Island City, New York. Ex. C of Pltff's Decl.

No one has worked in New York as an employee of Buena Vista since plaintiff and Harrison were terminated in November 1993. Aff. of Marjorie Dworak at ¶ 4. From about February 1994 until April 1995, an employee based in New Jersey marketed accounts in the tri-state area and Pennsylvania. Since April of 1995, marketing is being handled by an independent broker, not an employee, in Massachusetts. *Id.*

Launer was employed by defendants from March 1991, was notified of his termination in August 1993, and was "retained on the books" until November 15, 1993. Compl. at ¶ 25. During his employment, he conducted and attended regional sales meetings in New York. Pltff's Decl. at ¶ 11. In addition, as was previously mentioned, he had an employee, Anne Marie Harrison, working under him based in New York. "Because New York was and is such an important market, Buena

Vista's winemaker or brand managers would fly into New York approximately once every two to three months to conduct business. Also, regional meetings were held and conducted by Buena Vista's former president in New York approximately every six months."[1] *Id.* at ¶ 12.

Launer was notified of his termination along with other employees in August, 1993 at a meeting attended by the management of Buena Vista at LaGuardia Airport. It appears that Buena Vista was attempting to restructure the company turning its salespeople into independent brokers rather than employees. According to defendants, this was the only contact they ever had with New York. Defs.Memo. of Law at 7.

Soon after the firings all but two of the fired employees were rehired. Launer was one of two individuals not rehired. "In fact, when Marcus Moller–Racke, Chairman of GMBH, revoked the Termination Plan, he indicated to Mr. Launer that all former employees were definitely to be re-hired, except for Mr. Launer, and despite the fact that Mr. Launer's performance at Buena Vista had been exemplary." Compl. at ¶ 28. According to Launer, the only other individual who was not rehired—Anne Marie Harrison—was not looking for her job back. Decl. of Maione at ¶ 26.

Defendants maintain that the court does not have in personam jurisdiction over them because they deal with an independent brand agent for wines in New York which is not owned by them, and they employed Launer in the state of New Jersey. Launer lived in New Jersey. His checks were sent to New Jersey and his withholding and employment taxes were paid to the state of New Jersey. Aff. of Dworak at ¶ 6 and Ex. C.

Defendants initially claimed that they did not know of plaintiff's office in New York City, going so far as to provide an affidavit by John D. Wales, who searched the NYNEX Telephone Directory White Pages, reporting that Launer did not have a telephone number listed in Queens New York until 1994–95. Launer's name did not appear in the 1991, 1992, or 1993 books. However,

Launer produced contrary evidence—a phone bill that was reimbursed by defendants as company calls from a number with a 718 area code (a Brooklyn and Queens area code) which was dated May 1993. Pltff's Decl., Ex. B. Further, Launer produced a Racke USA salesteam list, dated January 2, 1992, which lists Richard Launer with a home address in New Jersey and a business address in Long Island City, New York. *Id.* at Ex. C. Moreover, Buena Vista's Vice President of Administration prepared a declaration which, among other things, stated: "Neither Buena Vista Winery nor Racke USA have ever maintained a 'regional office' in New York.... Further, neither Buena Vista Winery nor Racke USA have ever listed that office as a regional office," Decl. of Dworak at ¶ 4. However, as this information was directly contrary to the salesteam list provided by plaintiff, on November 28, 1995, the defendants conceded that the plaintiff's exhibit was a corporate document. Ltr from McGrath to court, dated 11/28/95. In fact, the memorandum which plaintiff uses as proof of his substantive claim was sent by the president of Buena Vista to the plaintiff in New York. Compl. at ¶ 18. Defendants maintain that "if plaintiff truly worked and lived in New York, he could prove that assertion by showing that he paid New York State and New York City income taxes, and generally shouldered the burdens that any other state resident shoulders." Defs' Reply Memo. at 1.

The issue of whether plaintiff is a New York or New Jersey resident (and where he paid taxes) is tangential and not determinative of whether in personam jurisdiction exists here. Similarly, who actually owned or paid the rent for Launer's New York office (defendants contend that they didn't know of such an office and did not pay for it) is irrelevant since Launer has proof that defendants contacted him at a 718 phone and fax number, received and sent weekly and monthly reports to a Long Island City address, and had meetings in New York. Pltff's Decl. at ¶ 5–6.

---

**1.** New York is a very important market for defendants; the tri-state area is the largest market for

defendants' products outside of California. Pltff's Decl. at ¶ 7–8.

**(2)**

Launer claims religious discrimination. Launer was the only Jewish employee of Buena Vista. Compl. ¶ 11–12. According to Launer, no one knew that he was Jewish when he was hired or for a significant time thereafter. *Id.* at ¶ 13. For the first eighteen months, he received positive reviews. *Id.* at ¶ 15. In July 1992, disparaging comments were allegedly made by the vice president of finance of Buena Vista and an employee of Racke GmbH, Mr. Kaspar, about Jews as well as New Yorkers who have a Jewish attitude at a winery social event in California. Compl. at ¶ 16. Launer confronted this individual and told him that he was Jewish. *Id.* at ¶ 17. In September 1992, when Launer requested vacation time because of the Jewish holy days, he received "disparaging remarks" from his superior, the president of Buena Vista, Mr. Cousins, and a further disparaging memo from him at Launer's New York office. *Id.* at ¶ 18. After the termination meeting at which many employees were fired but allowed to work an additional three months, the companies reconsidered their policy and re-hired everyone except Launer. *Id.* at ¶¶ 21–28.

Aside from his religious discrimination claim, Launer has an ERISA claim. Launer further contends that defendants "withheld certain fringe benefits due [him], including . . . not paying him his vested interest in the [Money Purchase Pension] Plan." *Id.* at ¶ 35. Although notified of the termination in August 1993, Launer was "retained on the books" as an employee until November 15, 1993, receiving all benefits and entitlements. *Id.* at ¶ 36. According to the law of New Jersey, where plaintiff was a resident, Launer was an "employee" of the corporate defendant up to and including November 15, 1993. *Id.* at ¶ 39. California law, according to the plaintiff, would similarly interpret its law to find plaintiff is an employee. Consequently, Launer "would have amassed well over the 1,000 hour minimum required to receive three years vesting in the Plan and, therefore, would have had a distribution made to him out of the Plan at the time that the corporate defendants determined not to re-hire him." *Id.* at ¶ 41.

**Discussion**

■ Federal courts look to the law of the state where the court sits to determine personal jurisdiction. In federal question cases, in the absence of a statutory provision for service, jurisdiction is limited by the forum state's long-arm statute. *Omni Capital International v. Rudolf Wolff & Co.,* 484 U.S. 97, 108, 108 S.Ct. 404, 411, 98 L.Ed.2d 415 (1987).

■ New York's long arm statute is to be found in N.Y.Civ.Prac. & Proc. § 302(a) and provides:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: (1) transacts any business within the state . . . (2) commits a tortious act within the state, . . . or (3) commits a tortious act without the state causing injury to person or property within the state, . . . if he (i) regularly does or solicits business . . . or derives substantial revenue from goods used or consumed or services rendered in the state. . . .

Thus, the New York long-arm statute requires a strong nexus between the plaintiff's cause of action and the defendant's in-state conduct. *McGowan v. Smith,* 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321, 323 (1981) ("Essential to the maintenance of a suit against a nondomiciliary under CPLR 302 . . . is the existence of some articulable nexus between the business transacted and the cause of action sued."). *See also Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 763 (2d Cir.1983). In fact, it is required that the cause of action arise from the act, *Fontanetta v. Am'n. Bd. of Internal Medicine,* 421 F.2d 355, (2d Cir.1970), but not necessarily the final or ultimate act which caused the injury. *Legros v. Irving,* 38 A.D.2d 53, 327 N.Y.S.2d 371 (1st Dep't 1971). In addition, the in-state conduct must be purposeful. *Galgay v. Bulletin Co., Inc.,* 504 F.2d 1062, 1064 (2d Cir.1974); *Hunter v. Calvaresi,* 45 Misc.2d 96, 256 N.Y.S.2d 356 (1964). "Whether a [party] has engaged in sufficient purposeful activity to confer jurisdiction in New York requires an examination of the

totality of circumstances." *Catauro v. Goldome Bank for Savings,* 189 A.D.2d 747, 592 N.Y.S.2d 422 (2d Dep't 1993).

Of particular significance here is that New York's long-arm statute, N.Y.Civ.Prac. & Proc. § 302, looks to when the cause of action accrued and not when the claim was filed to determine whether a defendant is subject to personal jurisdiction. *See Polgar v. Morse,* 104 Misc.2d 816, 429 N.Y.S.2d 351, 352 (Sup. Ct.1980).[2]

Plaintiff has made a substantial showing that the defendants were transacting business in New York at the relevant time and that the discriminatory claim consisted of a course of conduct occurring over a period of time both within and without of New York, but, in any case, while the defendants were transacting business in New York.[3] If plaintiff can establish his claim, the defendants caused injury to him in New York including making insulting remarks to plaintiff while at a business gathering in California; faxing plaintiff a memo with an allegedly discriminatory remark in New York, firing plaintiff in New York for discriminatory reasons, and subsequently, failing to re-hire him in California for the same improper motives. Consequently, the court finds jurisdiction in New York courts on all these bases of New York's long arm statute.

**(1) "Transacts any business"—§ 302(a)(1)**

■ Here, the cause of action, the discriminatory failure to re-hire, arises from defendants' transaction of business in New York including the firing of Launer. Because defendants regularly held meetings in New York, and even more often telephoned, faxed, and mailed items to its two offices in New York, and plaintiff's job included overlooking the sales to New York (as he was the Eastern regional vice-president of sales), and the essential meeting in which Launer was fired occurred in the Eastern District of New York for the convenience of the defendants, Pltff's Decl. at ¶ 13 and Compl. at ¶ 22, there is no question that defendants transacted business within the state.

■ Although the defendants' present contacts with New York are not clear, Section 302 requires that the defendants had business contacts in New York at the time the cause of action arose and not that a defendant had contacts with the state when the suit was brought. *Lancaster v. Colonial Motor Freight Line, Inc.,* 177 A.D.2d 152, 581 N.Y.S.2d 283, 287 (1st Dep't 1992); *see also State v. Davies,* 24 A.D.2d 240, 265 N.Y.S.2d 358 (3d Dep't 1965), *aff'd.,* 18 N.Y.2d 950, 277 N.Y.S.2d 146, 223 N.E.2d 570 (1966).

While the defendants assert that the telephone and mail contacts are not enough to rely upon as a basis for jurisdiction, especially since they claim that they have nothing to do with the New York office which Launer used, and thereby not "purposefully avail[ing] [themselves] ... of the benefits and protections of [New York's] laws," *Parke–Bernet Galleries v. Franklyn,* 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506

---

**2.** Because of this principle, discussion of plaintiff's additional argument that Proprietary is defendants' exclusive brand agent and does everything that the defendants would be required to do in New York becomes unnecessary. According to the plaintiff, "[c]learly, Proprietary stands in Defendant's stead in the state of New York." Decl. of Louis Maione at ¶ 5–6. Pursuant to the contract between Buena Vista and Proprietary:

as Exclusive Brand Agent, Proprietary will apply for, obtain, and keep in effect the Brand Label Registrations for all of Winery's Brand Name Products, and file all required monthly wholesale Price Schedules with the New York State Authority, which shall contain all of Winery's Brand Name Products an the licensed wholesalers whom it wishes to sell its Brands to retailers. Propriety will also be responsible for effecting all sales to the designated New York wholesalers ... In the event a Wholesal-

er does not pay within the prescribed credit period and Winery instructs Proprietary to institute legal action to collect the outstanding monies, Proprietary agrees to do so, and to prosecute such action fully, at the sole cost of Winery.... All New York State filing and/or registration fees incurred by proprietary on behalf of Winery shall be initially advanced by Proprietary, but said sums shall be refunded to Proprietary by Winery immediately upon presentment by Proprietary of invoices for the same.

Proprietary also acts as the brand agent for other wineries. Decl. of Dworak, dated 9/29/95, ¶ 5.

**3.** It is clear that Racke USA and Buena Vista Winery were transacting business in New York at the time plaintiff was fired. Inexplicably, neither party discussed Racke GmbH, so for the purposes of this decision, the court will treat it as the other two.

(1970), the setting up of important meetings for the company in New York establishes purposeful use under New York's long arm statute. It is important to emphasize that defendants had a choice of where to conduct these meetings and chose New York. *See Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Barnum*, 162 Misc.2d 245, 616 N.Y.S.2d 857, 862 (Sup.Ct.N.Y.Cty.1994).

Further, it should be noted that defendants are wrong when they assert that telephone and mail contacts with New York cannot be used to justify in personam jurisdiction.

> [O]ne need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302 for, particularly in this day of instant long-range communications, one can engage in extensive purposeful activity here without ever actually setting foot in the State.

*Parke–Bernet Galleries, Inc., supra*, at 17, 308 N.Y.S.2d 337, 256 N.E.2d 506.

Defendants maintain that the specific cause of action that gave rise to Launer's religious discrimination claim is that he was not re-hired, rather than that he was fired. Thus, according to the defendants, since the non-re-hiring decision was made in California, New York's long arm statute does not apply. However, this court believes that such a narrow view of events is inappropriate. As previously mentioned, the final or ultimate act causing injury need not occur in New York. If religious discrimination was indeed a factor in Launer's firing in New York, then surely the firing was part and parcel of the final act, the failure to re-hire. The firing occurred in New York at a forum chosen by the defendants for their convenience. This event immediately led to the re-hiring of all of its employees except for Launer.[4] Launer engaged defendants in months of negotiations and requests for explanations from the moment he was fired on August 11, 1993 until he was ultimately discharged in November 1993. Compl. ¶¶ 25–27. Furthermore, although the decision to not re-hire Launer while re-hiring everyone

else they had fired at the August meeting may have been made in California, it was made at a time when Launer was still working in New York for the defendants. Finally, in light of the false representations made to the court by defendants regarding the existence of a New York office, the court will fairly infer that the defendants were transacting business in New York both at the time of the firing and three months later at the time of the failure to re-hire. Consequently, viewing the totality of circumstances around defendants' activity in New York, the necessary nexus exists between the transaction of business and the cause of action. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 60 (2d Cir.1985); *Bialek v. Racal–Milgo, Inc.*, 545 F.Supp. 25, 34 (S.D.N.Y.1982); *McGowan, supra*, at 272, 419 N.E.2d 321.

### (2) "Tortious act within the state," § 302(a)(2)

In addition, Launer has a second method of obtaining personal jurisdiction over defendants by invoking § 302(a)(2) which provides personal jurisdiction to one who commits a tortious act in New York.

In this instance, the alleged tortious act is the defendants' discriminatory conduct in firing and subsequently failing to re-hire the plaintiff. Again, it must be emphasized that, if plaintiff's allegations are true, both actions may fairly be considered one event as they arose from the same course of conduct based on religious discrimination. The fact that the statute of limitations may have run on the firing prior to bringing this proceeding does not change the fact that the firing was also part of a series of intentional acts which were part of a continuous tortious act as well as an independent wrong.

The phrase "tortious acts" encompasses more than simply torts. *See Clark v. United States*, 481 F.Supp. 1086, 1097 (S.D.N.Y.1979) (finding that constitutional violations of illegal surveillance "appear sufficiently akin to tortious activity to warrant a holding that they fall within the reach of § 302(a)(2) and (3)"); *Naples v. City of New*

---

4. One other employee was not re-hired allegedly because she had already had accepted other employment which she preferred.

*York,* 309 N.Y.S.2d 663, 34 A.D.2d 577 (2d Dep't 1970). In fact, discrimination can be a tortious act. In *United States v. Burke,* 504 U.S. 229, 246, 112 S.Ct. 1867, 1877, 119 L.Ed.2d 34 (1992), Justice Souter noted: "Our cases have, indeed, recognized parallels ... between tort claims and claims under antidiscrimination statutes other than Title VII." *See also Goodman v. Lukens Steel Co.,* 482 U.S. 656, 677 n. 9, 107 S.Ct. 2617, 2629 n. 9, 96 L.Ed.2d 572 (1987) ("The tortious aspect of racial discrimination has been noted by the Court in *Curtis v. Loether,* 415 U.S. 189, 196 n. 10, 94 S.Ct. 1005, 1009 n. 10, 39 L.Ed.2d 260 ... in which Justice Marshall suggested that racial discrimination might eventually be treated as a 'dignitary tort.' "). Thus, acts of discrimination are often considered to be civil rights violations which have been found to be torts. *U.S. v. Burke,* 504 U.S. 229, 112 S.Ct. 1867, 119 L.Ed.2d 34 (1992).

The tortious acts alleged here are not like the negligence of a car accident which occurs at one time and in one place. Rather, the nature of the conduct alleged by Launer often occurs over a period of time including actions taking place within and without the state.

The injury from the discriminatory and insulting remarks made to him in California and New York as well as the discriminatory firing and failure to re-hire occurred to the plaintiff where he worked, where he was fired, and where he maintained an "ongoing dialogue" with the defendants in an effort to be an employee or a broker for the defendants. Compl. at ¶ 27. Section 302(a)(2) provides for jurisdiction over non-residents who commit a tortious act in New York state as long as the out-of-state resident was actually in New York when the act was committed. *Roth v. El Al Israel Airlines, Ltd.,* 709 F.Supp. 487 (S.D.N.Y.1989). Here, the management of the defendants came to New York in order to fire the employees, thus the elements of § 302(a)(2) are satisfied.

### (3) "Tortious act without the state"—§ 302(a)(3)

■  Finally, Launer can also maintain personal jurisdiction in the Eastern District of New York relying on the third branch of the long arm statute which provides personal jurisdiction to one who commits a tortious act outside of the state with injury resulting in the state and defendants' deriving substantial revenue from New York.

■  As previously discussed, a tortious act occurred outside of New York as well as in New York. The decision to not re-hire Launer, according to defendants, occurred in California which resulted in injury to him in New York where he was negotiating with defendants for his job. New York law is clear that an injury does not occur in New York simply because the plaintiff is domiciled or does business there. *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.,* 439 F.2d 428 (2d Cir.1971). Just as clear, however, is that the injury occurring in this instance was received in New York where plaintiff had been working for defendants and had been negotiating for his job. Launer's situation is analogous to the plaintiff's position in *Sybron Corp. v. Wetzel et. al.,* 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978). In *Sybron,* plaintiff employed defendant Wetzel who worked for plaintiff in New York for thirty-four years. Wetzel then retired to Florida, but was induced by plaintiff's competitor to work for that company in New Jersey, providing the competitor plaintiff's trade secrets. Plaintiff sued to enjoin its competitor from employing Wetzel, and the New York Court of Appeals found that the competitor was subject to jurisdiction under § 302(a)(3) on the ground that the competitor committed a tortious act in New Jersey causing an injury in New York.

■  The last element to be established in order to have jurisdiction pursuant to § 302(a)(3) is that defendants derived substantial revenue from New York. Substantial revenue can mean either a substantial sum of money, *Allen v. Canadian General Elec. Co.,* 410 N.Y.S.2d 707, 65 A.D.2d 39 (3d Dep't 1978), *aff'd,* 50 N.Y.2d 935, 431 N.Y.S.2d 526, 409 N.E.2d 998 (1980), or that the defendant's interstate revenue is a substantial portion of its total revenue. *Allen v. Auto Specialties Mfg. Co.,* 45 A.D.2d 331, 357 N.Y.S.2d 547, 550 (3d Dep't 1974). Launer's

affidavits maintain that New York was the defendants' second biggest market and an "important" market. Pltff's Decl. at ¶¶ 7–8. Thus, it is apparent that the defendants derived a large portion of their revenues from New York. Consequently, under § 302(a)(3), New York courts have personal jurisdiction over defendants for the tortious act it committed, by discriminatorily deciding not to re-hire Launer in California causing injury to him in New York, a state from which defendants derive substantial revenue.

Consequently, in personam jurisdiction over defendants exists in the Eastern District of New York under the long arm statute, § 302(a)(3), as well as § 302(a)(1) and § 302(a)(2).

### (4) Improper Venue—

### 42 U.S.C. § 2000e–5(f)(3) & 29 U.S.C. § 1132(e)(2)

■ Defendants contend that the case must be dismissed for improper venue. However, it is clear that venue is proper for all of the plaintiff's claims. Subject matter jurisdiction is based on federal questions raised by 42 U.S.C. §§ 2000e–2 and 2000e–3 and ERISA. Claims under Title VII are strictly governed by the venue provisions of that title which provide:

[A]n action may be brought in any judicial district in the state in which the unlawful employment practice alleged to have been committed, in the judicial district in which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged employment practice. 42 U.S.C. § 2000e–5(f)(3).

Plaintiff contends that, relying on the last clause of the statute "in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice," venue is proper in the Eastern District of New York because Launer maintained an office in Long Island City, New York.

Defendants counter Launer's proposition, relying upon *Wade v. Olympus Indus. Inc.*, 695 F.Supp. 730, 734 (S.D.N.Y.1988), which found that where a termination was made in New York, but other more substantial decisions, such as executing employment contracts, were made in Washington, venue in New York was improper. However, this case can be distinguished on two grounds. *Wade* was a diversity case and thus was reviewing 28 U.S.C. § 1391(a) rather than a Title VII or ERISA action. Second, even if § 1391 was the governing statute, since *Wade* was decided the relevant section has been amended to include venue as proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." As previously explained, the firing occurred in New York as did Launer's negotiations to be re-hired. Consequently, a substantial part of the events giving rise to the discrimination claim occurred in New York.

In addition, ERISA's venue provision provides that an action may be brought:

[i]n the district where the plan is administered, where the breach took place, or where a defendant resides or may be found ... 29 U.S.C. § 1132(e)(2).

While the defendants focus on the place of the plan's administration, California, plaintiff claims that the ERISA provision permits venue to be laid in the district where an employee performs his work and earns his pension credits, thus, venue is proper with respect to plaintiff's ERISA claim. *Varsic v. United States District Court for the Central District of California*, 607 F.2d 245, 247 (9th Cir.1979). Thus, this court finds venue to be proper in the Eastern District of New York.

### (5) Transfer of Venue for Convenience of Witnesses—

### 28 U.S.C. § 1404(a)

■ Alternatively, defendants argue, even if the court finds venue to exist in New York, for the convenience of the parties the case should be transferred to the Northern District of California. In *Hernandez v. Graebel Van Lines*, 761 F.Supp. 983 (E.D.N.Y.1991) and *Frasca v. Yaw*, 787 F.Supp. 327 (E.D.N.Y.1992), a two-prong inquiry on a motion to transfer for the convenience of the parties and witnesses was adopted. The first inquiry is whether the

213

action sought to be transferred is one that might have been brought in the district court in which the moving party seeks to have the case litigated. Second, courts must consider whether "the convenience of the parties and witnesses" and "the interest of justice" favor transfer. Factors in this portion of the analysis include:

(1) the convenience of the parties; (2) convenience of the witnesses; (3) the relative means of the parties; (4) the locus of operative facts and relative ease of access to sources of proof; (5) the attendance of witnesses; (6) the weight accorded the plaintiff's choice of forum; (7) calendar congestion; (8) the desirability of having the case tried by a forum familiar with the substantive law to be applied; (9) practical difficulties, and finally, (10) the Court should also consider how best to serve the needs of justice based upon an assessment of the totality of material circumstances. *Hernandez,* 761 F.Supp. at 987.

According to the defendants, the convenience of the parties and witnesses—there are many more company personnel that would have to travel to New York than the one plaintiff who will need to go to California—favors transfer. However, plaintiff points out that in fact while the defendants may be more convenient in California, he is more convenient in New York. Since convenience and justice for all parties is not met by transfer, no transfer should be made because "[u]nless the balance of convenience weighs clearly in favor of the defendants, a plaintiff's choice of forum shall not be disturbed." *Y4 Design, Ltd. v. Regensteiner Pub. Enterprises, Inc.,* 428 F.Supp. 1067, 1069 (S.D.N.Y.1977).

Defendants further contend that most witnesses and other evidence are in California and that convenience of the witnesses is "probably the single-most important factor to be considered in a transfer action." *Frasca,* 787 F.Supp. at 331. First, it claims that nearly all of the witnesses are in Northern California or Germany. Some former employees of defendants who are living in California would not be amenable to service of process in New York. Defendants further caution that the relative means of the party cannot be dispositive and the substantial costs to the defendants must be considered.

However, although California is a more convenient forum for Californian witnesses, New York is likely a more convenient forum for the German witnesses. This is especially true since the company, at least in the past, met at LaGuardia airport as a convenient, half-way point. Pltff's Decl. at ¶ 11–12. As for defendants' argument that some individuals no longer work for the company and thus could not be subpoenaed in New York, plaintiff counters that it is his understanding that these individuals travel to New York to conduct business on a frequent basis. In fact, in plaintiff's declaration, the witnesses either to be deposed or called to testify consist of a non-party witness who resides in New York City; a party witness who resides in Chicago; a non-party witness who regularly travels to New York on business; and, a party witness who resides in Germany. Pltff's Decl. at ¶ 16.

The locus of operative facts, according to defendants, is in California where some of the alleged discriminatory remarks occurred. However, the one action that did occur in New York, the termination, is uncontroverted. Furthermore, they maintain that while the plaintiff's choice of forum is a factor, it becomes insignificant when the forum does not have a significant connection to the operative facts or transactions on which the case is based. But plaintiff asserts, with some documented proof, that the discriminatory remarks occurred both in California, at a company outing, and in New York, by conversations and a facsimile about vacation time for the Jewish holy days. Compl. at ¶¶ 18–20. Finally, a not inappropriate factor to be considered in weighing the equities here are the misstatements of facts in defendants' original moving papers. The court can justifiably caste a skeptical eye on defendants assertions of an unfair burden to its witnesses and to itself if it were required to litigate this matter in New York. Indeed, it leads to the conclusion that the motion to transfer was motivated solely in recognition of the truth of plaintiff's claim that "[i]f this case were transferred to the Northern District of California, I would have to hire new counsel, and I simply could not afford to maintain the action. I am sure the defendants are aware of this fact." Pltff's Decl. at ¶¶ 17–18.

For these reasons, the motions to dismiss for improper venue is denied as plainly without merit and the motion to transfer in the interest of justice is denied as unsupported.

### (6) State and City Claims

■ Launer alleges city and state law causes of action against the defendants under the New York City Administrative Code and the New York State Human Rights Law. The New York City Administrative Code vests in the New York City Commission on Human Rights the authority and jurisdiction to eliminate discrimination only within the City of New York. N.Y.Admin.Code, Tit. 8. The defendants maintain that the actions must be dismissed because Launer resides in New Jersey; defendants are California corporate residents with no officers in New York; and, all alleged discriminatory acts against Launer were to have occurred within California. Defendants continue to overlook the fact that the president of one of the companies allegedly made discriminatory remarks to Launer and faxed him a memo with allegedly discriminatory remarks at the (718) telephone number. Compl. at ¶ 18. Furthermore, the firing occurred in New York. Thus, the City action can proceed.

Under the New York Human Rights Law, defendants contend, citing *Beckett v. Prudential Ins. Co. Of America*, 893 F.Supp. 234 (S.D.N.Y.1995), that the law "does not afford a remedy to non-New York residents for out-of-state acts of discrimination by non-resident corporations." Defs' Mem. at 16. In addition, defendants allege that they do not fit the definition of an "employer" under the New York Human Rights Law which does not include any employer with fewer than four persons in his employ. NY Human Rights L. § 292(5). Currently, none of the defendants employ individuals in New York. Decl. of Dworak at ¶ 4.

■ Launer now maintains that he is a resident of New York, his address is in Long Island City. Pltff's Memo. at 15. Regardless of whether Launer is a resident in New York, where he owned a home and office but did not pay taxes, etc., New York case law is clear that the New York Human Rights Law applies to discrimination occurring in New York against non-residents even if the discrimination is by foreign corporations. *U.S. Power Squadrons v. State Human Rights Appeal Board*, 59 N.Y.2d 401, 465 N.Y.S.2d 871, 452 N.E.2d 1199 (1983); *Matter of Walston & Co. v. N.Y. City Commission on Human Rights*, 41 A.D.2d 238, 342 N.Y.S.2d 459 (1st Dep't 1973). Thus, the state cause of action is also proper.

Last, defendants claim that they are not an employer under N.Y.Human Rights L. § 292(5) as they do not employ four individuals in New York is also without merit because there is no requirement that the four people be employed in New York. *Alie v. NYNEX Corp.*, 158 F.R.D. 239 (1994); *State Div. of Human Rights on Complaint of Emrich v. GTE Corp.*, 109 A.D.2d 1082, 487 N.Y.S.2d 234 (4th Dep't.1985).

### Conclusion

In personam jurisdiction exists in this action in New York based on all these branches of § 302. Venue also exists under the specific statutes laid out in Title VII and ERISA. Further, the interests of justice and the convenience of the witnesses do not require a transfer of venue from plaintiff's choice of forum. Last, plaintiff has properly alleged claims under state and city law.

SO ORDERED.