WILLIE M. LANCASTER, Also Known as WILLIE M. JOSEY, Respondent, v COLONIAL MOTOR FREIGHT LINE, INC., and its Successor, GEORGE K. CARTER, Appellants, et al., Defendants.

First Department, February 25, 1992

154

APPEARANCES OF COUNSEL

*Deborah F. Peters* of counsel *(Goldblum & DiCicco,* attorneys), for appellants.

*Norman Leonard Cousins* for respondent.

**OPINION OF THE COURT**

ELLERIN, J.

The issue before us on this appeal is the showing that must be made in order to subject nondomiciliaries, specifically a foreign corporation and a nonresident individual, to the personal jurisdiction of the courts of this State.

On August 24, 1987, plaintiff was seriously injured in an accident which occurred in Kershaw County, South Carolina, while she was a passenger in a vehicle operated by Minerva

Josey, a New York resident, who was killed in the accident. The instant action was instituted in August 1990 in Bronx County, the county of residence of the administrator of decedent Josey's estate, who is a named defendant. The appellants on this appeal are the other named defendants in the action, Kenneth Carter, the driver of a tractor-trailer which was also involved in the accident, and his then employer and the owner of the truck, Colonial Motor Freight Line, Inc. (Colonial).

After plaintiffs moved to dismiss various defenses, defendants-appellants cross-moved to dismiss the action for lack of personal jurisdiction as to each of them. Defendants-appellants' moving papers included a sworn statement by a former vice-president of Colonial that the corporation had ceased doing business entirely in 1988. This statement was not controverted by plaintiff, who appears to have been aware of Colonial's defunct status, since the action is captioned as against Colonial "and its Successor", without specification. In seeking to defeat the cross motion, plaintiff presented some evidence that Colonial's trucks had been used in the past to ship goods to locations in New York and argued that she had had insufficient time to respond and should be allowed additional time to gather more information to enable her to establish jurisdiction. The IAS court denied the cross motion to dismiss, with leave to renew upon completion of discovery.

■ At the outset, we reject plaintiff's argument that the subject order is not appealable as of right because it was conditionally denied with leave to renew upon completion of disclosure (see, 7 Weinstein-Korn-Miller, NY Civ Prac ¶ 5701.16). In conditionally denying defendants' cross motion to dismiss for lack of personal jurisdiction, the IAS court was apparently relying on the ground set forth in CPLR 3211 (d), which authorizes such denial where it appears from affidavits submitted in opposition that "facts essential to justify opposition may exist but cannot then be stated". In the instant case, however, we find that, in light of appellants' uncontested proof, plaintiff failed to demonstrate the necessary possibility that further disclosure would reveal facts that could render defendants subject to the jurisdiction of the courts of this State and that the cross motion to dismiss should have been granted as a matter of law.

It is not in dispute that appellants are a foreign corporation and its employee who as nondomiciliaries of this State, are not subject to our courts' jurisdictional reach in the traditional sense. Plaintiff seeks to invoke such jurisdiction primar-

ily on the ground that the appellants were "present" and "doing business" within the State (CPLR 301) and, alternatively, on the basis of long-arm jurisdiction (CPLR 302).

Jurisdiction based on the fact that a foreign corporation is doing business in New York is historically founded on the traditional common-law concept that the State has power to exercise jurisdiction over those who are within its borders regardless of whether they have expressly consented to be subjected to such jurisdiction *(Pennoyer v Neff,* 95 US 714). As Judge Cardozo long ago stated, "All that is requisite is that enough be done to enable us to say that the corporation is here * * * If it is here it may be served" *(Tauza v Susquehanna Coal Co.,* 220 NY 259, 268). This common-law concept was statutorily recognized in CPLR 301, which provides, simply, that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore".

Extensive case law has evolved defining the nature and quality of the corporate activities which would be necessary to establish that a corporation is within New York " 'not occasionally or casually, but with a fair measure of permanence and continuity' " *(Landoil Resources Corp. v Alexander & Alexander Servs.,* 77 NY2d 28, 34; *Tauza v Susquehanna Coal Co., supra,* at 267) so as to show that it is "doing business" *(see generally,* Siegel, NY Prac §§ 82, 83). While an examination of the various factual permutations which have been held to constitute "doing business" is not necessary to our decision here, what is essential is to note that a fundamental *sine qua non* of all such holdings is the requirement that defendant be shown to have been "doing business" at the time when the action was commenced *(see, Gaboury v Central Vt. Ry. Co.,* 250 NY 233, 236-237). This is crucial to the concept of "presence" upon which the jurisdiction is based, since the defendant corporation must be "here" and therefore subject to the State's power, at the very time of the exercise of the jurisdiction itself. Once it is established that the corporation was doing business at such time, personal jurisdiction will be acquired over the corporation for any cause of action asserted against it, no matter where the events occurred which give rise to that cause of action. *(Bryant v Finnish Natl. Airline,* 15 NY2d 426; *Public Adm'r of County of N. Y. v Royal Bank,* 19 NY2d 127.) In this case, the sharply contested issue of whether Colonial may at some time in the past have done or transacted business in New York would ultimately be irrele-

vant. Since it is not denied that Colonial had entirely ceased its operations in 1988, it would be impossible to demonstrate that it was "doing business" here some two years later, in August 1990, the crucial time period when the action was commenced. Accordingly, plaintiff's attempt to rely on CPLR 301 as a basis for invoking personal jurisdiction against Colonial must fail as a matter of law.

Plaintiff's attempt to posit jurisdiction on CPLR 302 is equally unavailing. In recognition of twentieth century realities, the stringent requirements enunciated in *Pennoyer v Neff (supra)* of either consent or "presence" of the nondomiciliary at the time of the commencement of the action as a necessary predicate for personal jurisdiction, were ameliorated by the watershed decision in *International Shoe Co. v Washington* (326 US 310), which established the alternative concept of "long-arm jurisdiction". The Supreme Court there held that due process permits each State to exercise jurisdiction over those who have established "sufficient contacts or ties with the state of the forum to make it reasonable and just, according to our traditional conception of fair play and substantial justice, to permit the state to enforce the obligations which [defendant] has incurred there" *(supra, at 320)*. Thus, under *International Shoe* and its progeny, even those corporations which are undeniably not "doing business" here at the time the action is commenced, may be subject to personal jurisdiction if they have performed an act or acts within the State which sufficiently relate to the harm which is the subject of the lawsuit. In this State, the parameters of such jurisdiction are set forth in CPLR 302.

Although the acts which are delineated in CPLR 302 as the basis for exercising personal jurisdiction over a nondomiciliary are considerably more substantial than would be constitutionally necessary to satisfy due process concerns *(Banco Ambrosiano v Artoc Bank & Trust,* 62 NY2d 65, 71; *Longines-Wittnauer Watch Co. v Barnes & Reinecke,* 15 NY2d 443), they are far less onerous than those traditionally required to establish the "presence" contemplated under CPLR 301. More specifically, the showing required to establish that a defendant was "transact[ing] *any* business" within the State, pursuant to CPLR 302 (a) (1), is substantially less than that for establishing that a defendant was doing business within the State *(Public Adm'r of County of N. Y. v Royal Bank,* 19 NY2d 127, supra; Simonson v International Bank, 14 NY2d 281, 288). Moreover, while jurisdiction under CPLR 301 requires that

defendant's "presence" by virtue of doing business here be demonstrated as of the time of the commencement of the action, which once established would permit defendant to be sued on causes of action wherever they may have arisen, the focus of CPLR 302 (a) (1) is quite different. Under the latter, it is not the defendant's activities at the time that the action is commenced that are significant, but, instead, what must be shown is that the defendant had some business contacts within this State and that the cause of action sued upon arose out of those business contacts. What is crucial to the maintenance of a suit against a nondomiciliary under CPLR 302 (a) (1) is the establishing of a substantial relationship or nexus between the business transacted by defendant in this State and the plaintiff's cause of action. *(See, McGowan v Smith,* 52 NY2d 268.)

■ The requisite nexus or relationship between any possible contacts by defendant corporation within this State and the cause of action here sued upon is wholly lacking. It is not disputed that the cause of action arises from a vehicle collision which occurred in South Carolina between one of defendant's trucks and an automobile in which plaintiff was a passenger. That accident is not alleged to be, nor can it in any way be said to be, related to any possible business contacts or transactions which defendant corporation may have been engaged in at that time in the State of New York and further discovery could provide no evidence that would alter this conclusion. It is clear, therefore, that personal jurisdiction cannot be obtained over defendant corporation through the vehicle of CPLR 302 (a) (1), as a matter of law.

■ While subdivision (a) (3) of CPLR 302, which provides jurisdiction under specified circumstances where the nondomiciliary "commits a tortious act without the state causing injury to person or property within the state", may superficially appear to have some relevance to the case at hand, upon more careful analysis it is clear that it does not apply here, because the out-of-State tortious act did not cause injury in New York within the meaning of the statute. Here the injury actually occurred in South Carolina notwithstanding that plaintiff's pain and suffering largely took place in New York, her place of domicile. The thrust of the statute is directed to the " ' "imparting of the original injury within the State of New York and not resultant damage, in order that jurisdiction might be effectuated" ' ". *(Bramwell v*

*Tucker,* 107 AD2d 731, 733, quoting *Kramer v Hotel Los Monteros,* 57 AD2d 756, 757; *lv denied* 43 NY2d 649.)

▌ Finally, even if plaintiff were able through additional discovery, to prove her bare allegation that appellants owned real property in this State, such would not be sufficient under subdivision (a) (4) of the statute to invoke long-arm jurisdiction with respect to the instant case because that subdivision, too, requires a relationship between the property and the cause of action sued upon. *(Aluminal Indus. v Newtown Commercial Assocs.,* 89 FRD 326 [US Dist Ct, SD NY].)

▌▌ Plaintiff's attempt to acquire jurisdiction over defendant-appellant Carter, the driver of the corporation's truck at the time of the accident, must also fail as a matter of law for the same reasons as those previously discussed. In addition, while it has been held that a nonresident individual, like a corporation, can be deemed present for jurisdictional purposes by virtue of "doing business" in this State, even as to causes of action unrelated to the business done within the State *(ABKCO Indus. v Lennon,* 52 AD2d 435; *but see, Matter of Nilsa B.B. v Blackwell,* 84 AD2d 295), the individual cannot be subject to such jurisdiction unless doing business here individually, rather than on behalf of a corporation *(Laufer v Ostrow,* 55 NY2d 305, 313). There has never been any allegation that Carter, as an individual, ever engaged in any activity whatsoever in New York, much less that he was doing so at the time the action was commenced.

▌ Thus, the cross motion to dismiss unconditionally should have been granted as to both defendants. We note that at oral argument, defense counsel consented to forego raising the Statute of Limitations as an affirmative defense should a similar action be commenced in another State.

Accordingly, the order of the Supreme Court, Bronx County (Bertram Katz, J.), entered February 8, 1991, which, *inter alia,* denied the cross motion of defendants-appellants to dismiss the complaint for lack of jurisdiction with leave to renew upon completion of disclosure, should be unanimously reversed, to the extent appealed from, on the law the cross motion granted and the complaint against defendants-appellants dismissed, without costs, upon condition that defendant not raise the Statute of Limitations as an affirmative defense should a similar action be commenced in another jurisdiction.

ROSENBERGER, J. P., WALLACH, KASSAL and RUBIN, JJ., concur.

Order, Supreme Court, Bronx County, entered on February 8, 1991, unanimously reversed, to the extent appealed from, on the law, the cross motion granted and the complaint against defendants-appellants dismissed, without costs, upon condition that defendant not raise the Statute of Limitations as an affirmative defense should a similar action be commenced in another jurisdiction.