■ ROGER JOHNSON et al., Appellants, v DANIEL A. WARD, Respondent. [775 NYS2d 297]—

Order, Supreme Court, New York County (Milton A. Tingling, J.), entered October 2, 2002, which, upon the grant of reargument, adhered to a prior order of the same court and Justice, entered on or about January 14, 2002, granting defendant's motion to dismiss the complaint for lack of personal jurisdiction over him, reversed, on the law, without costs and disbursements, the motion denied and the complaint reinstated. Appeal from the January 14, 2002 order unanimously dismissed, as superseded by the appeal from the subsequent order.

Defendant was the owner and operator of a vehicle involved in the automobile accident giving rise to this personal injury action. At the time the accident occurred, in New Jersey, defendant was a New York State resident, licensed to drive in this state, with his vehicle registered here. By the time the action was commenced, he had moved to New Jersey.

Defendant moved to dismiss the complaint, arguing that there was no basis for long-arm jurisdiction pursuant to CPLR 302. The Supreme Court granted the motion. On plaintiff's motion for reargument, the court granted reargument, and, upon reargument, adhered to its original determination. We reverse.

Pursuant to CPLR 302 (a) (1), a court may exercise personal jurisdiction over a nondomiciliary who transacts business in New York. "[W]hat must be shown is that the defendant had some . . . contacts within this State and that the cause of action sued upon arose out of those . . . contacts. What is crucial

to the maintenance of a suit against a nondomiciliary under CPLR 302 (a) (1) is the establishing of a substantial relationship or nexus between the business transacted by defendant in this State and the plaintiff's cause of action [citation omitted]" (*Lancaster v Colonial Motor Frgt. Line,* 177 AD2d 152, 158 [1992]). "The 'transacting business' prerequisite is satisfied if it is shown that the nondomiciliary ' "purposefully avail[ed] itself of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws" ' " (*McLenithan v Bennington Community Health Plan,* 223 AD2d 777, 778 [1996], *lv dismissed* 88 NY2d 1017 [1996], quoting *McKee Elec. Co. v Rauland-Borg Corp.,* 20 NY2d 377, 382 [1967], quoting *Hanson v Denckla,* 357 US 235, 253 [1958]). Unlike a suit brought pursuant to CPLR 301, it is not necessary under CPLR 302 (a) (1) to show that the defendant was "doing business" in the state at the time the action was commenced (*see Gaboury v Central Vt. Ry. Co.,* 250 NY 233, 236-237 [1929]).

Guided by these principles, we conclude that defendant's New York driver's license and vehicle registration are sufficient to satisfy the "transacting business" requirement. By becoming a licensed driver and registering his vehicle in this state, he has "purposefully avail[ed himself] of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws" (*McLenithan* at 778) and "should reasonably expect to defend [his] actions there" (*Kreutter v McFadden Oil Corp.,* 71 NY2d 460, 466 [1988]). What's more, since the cause of action sued upon arose over the operation by a driver licensed in New York of a vehicle registered in New York, it has a substantial nexus with defendant's activities here (*see Lancaster* at 158). Concur—Mazzarelli, J.P., Sullivan, Ellerin and Lerner, JJ.

Marlow, J., dissents in a memorandum as follows: I respectfully dissent from the majority's conclusion that New York's long-arm jurisdiction[1] should be upheld against a defendant who, although a New York resident on the date of this out-of-state auto accident, was no longer a New York resident on the date plaintiff commenced this personal injury action. The majority rests its holding on the ground that this lawsuit arises from an event that has a substantial nexus with the transaction of business by defendant in New York, namely, defendant's possession of a driver's license and vehicle registration on the date

---

1. New York's long-arm statute (CPLR 302 [a] [1]) provides in relevant part that: "As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary . . . who . . . 1. transacts any business within the state."

of the accident which the State of New York had previously issued to him. Specifically, I cannot abide the majority's determination that defendant's possession of a New York driver's license and car registration constitutes or represents the "transaction of business" sufficient to confer in personam jurisdiction, where the cases on which the majority relies to support this element of long-arm jurisdiction involve business transactions which have a commercial aspect and a monetary stake, i.e., relate to a person's employment or generate a profit or income. Thus, those cases do not apply to the facts at bar nor do they, in my opinion, support the majority's legal conclusion.

For example, in *Kreutter v McFadden Oil Corp.* (71 NY2d 460 [1988]), the transaction of business at issue was plaintiff's investment of $70,000 in a Texas oil venture involving, among others, a Texas corporation which marketed oil investments through its office in New York City. In *McLenithan v Bennington Community Health Plan* (223 AD2d 777 [1996], *lv dismissed* 88 NY2d 1017 [1996]), a physician who was licensed to practice medicine in New York and Vermont, but who confined his practice solely to Vermont, was nevertheless subject to New York's long-arm jurisdiction in a medical malpractice action commenced in a New York court by a New York resident who was treated in Vermont only. The Third Department found that the doctor had "clearly interjected himself into New York's service economy" by contracting with defendant Capital Area Community Health Plan, Inc., a New York-based health maintenance organization, for the purpose of providing medical care and treatment to its subscribers who are mainly New York residents (*id.* at 778). In *Lancaster v Colonial Motor Frgt. Line* (177 AD2d 152 [1992]), this Court found that the South Carolina car accident was "not alleged to be, nor [could it] be said to be, related to any possible [New York] business contacts or transactions which defendant corporation may have been engaged in at that time" (*id.* at 158). Therefore, plaintiff's attempt to invoke long-arm jurisdiction failed.

In order to satisfy the constitutional requirement that there be a jurisdictional basis for a court to have the "power, or reach, . . . over a party, so as to enforce judicial decrees . . . there must be a constitutionally adequate connection between the defendant, the State and the action (*see, Burger King Corp. v Rudzewicz,* 471 US 462, 475; *World-Wide Volkswagen Corp. v Woodson,* 444 US 286, 291; *International Shoe Co. v Washington,* 326 US 310, 315; *see generally,* Siegel, NY Prac § 58, at 78 [3d ed]; 2 Weinstein-Korn-Miller, NY Civ Prac ¶ 308.01)" (*Keane v Kamin,* 94 NY2d 263, 265-266 [1999]). I believe no such predicate exists on the facts before us.

We begin our analysis of whether the dictates of CPLR 302 (a) (1) were satisfied in this case by noting that the majority's interpretation of this long-arm statute appears inconsistent with New York's principles of statutory construction. McKinney's Consolidated Laws of NY, Book 1, Statutes § 94 (at 190-193) states in pertinent part:

"The Legislature is presumed to mean what it says, and if there is no ambiguity in the act, it is generally construed according to its plain terms. The court is obliged to construe statutory language literally where it expresses the evident intent of the Legislature, and the court cannot disregard the plain words of a statute even in favor of what may be termed an equitable construction, in order to extend it to some supposed policy not included in the act. A statute should not be extended by construction beyond its express terms or reasonable implications of its language. . . .

"The language of a statute is generally construed according to its natural and most obvious sense, without resorting to an artificial or forced construction . . . in accordance with its ordinary and accepted meaning."

Indeed, a plain-meaning interpretation of this particular provision of the long-arm statute is supported by Professor David Siegel's discussion of long-arm jurisdiction in which he sets forth illustrative case examples—all dealing exclusively with commercial, contractual and employment matters and transactions (Siegel, NY Prac § 86 [3d ed]). Professor Siegel includes nothing remotely resembling the type of activity that plaintiff would have us deem adequate to confer long-arm jurisdiction (*see also* 29 NY Jur 2d, Courts and Judges §§ 610-638).

Beyond the cases which the majority cites, there are indeed others upholding long-arm jurisdiction where, unlike here, a defendant is involved in an employment-related business transaction (*see e.g. George Reiner & Co. v Schwartz,* 41 NY2d 648 [1977] [long-arm jurisdiction upheld where defendant salesman, a Massachusetts resident, came to New York to negotiate an employment relationship out of which a contractual dispute later arose]; *Wright v 299 Union Ave. Corp.,* 288 AD2d 382 [2001] [long-arm jurisdiction upheld over defendant foreign corporation, which contracted with New York shipbuilder to build ferry, for purposes of shipbuilder's employee's personal injury action, where contract was executed in New York, parties agreed to resolve disputes according to New York law, defendant agreed to accept delivery in New York, and defendant sent its employees to New York to approve change orders]).

However, the activity at issue before us (i.e., being granted an

operator's license or auto registration) does not relate to, nor is it, a business transaction of a commercial or economic character. Rather, the more precise inquiry which I believe underlies the issue here is whether New York law requires defendant to defend this action in a foreign state where the "business transaction" alleged is not in any way related to his employment or where defendant has not by his conduct "interjected himself into New York's service economy" (*McLenithan, supra,* 223 AD2d at 778), or into any other New York commercial environment. Based on (1) New York case law which upholds long-arm jurisdiction, (2) New York case law which refuses to grant long-arm jurisdiction over nonresidents, and (3) case law in other states which refuses to uphold long-arm jurisdiction when faced with similar fact patterns, I conclude the order granting defendant's motion to dismiss for lack of personal jurisdiction was correct.

There appears to be no dearth of decisions which decline to invoke long-arm jurisdiction over nonresidents, even when they have engaged in some business activity or an activity somehow connected to a business activity. For example, in *Ingraham v Carroll* (90 NY2d 592 [1997]), the defendant, a vascular surgeon who practiced and resided in Vermont, was not subject to New York's long-arm jurisdiction in a malpractice action commenced by a New York resident, where the visit to the doctor in Vermont was based upon an ad hoc referral by a New York clinic. Although the Court of Appeals found that the defendant could expect his actions to have consequences in New York, he did not solicit business or maintain an office in New York and his medical practice was limited to Vermont (*see also Sedig v Okemo Mtn.,* 204 AD2d 709 [1994] [plaintiff's tort claim arising from ski slope injury in Vermont was too remote from the alleged sales and promotional activities in New York of defendant, a Vermont corporation not licensed or authorized to do business in New York, to support long-arm jurisdiction where ski resort gave complementary ski passes to ski shops in New York which displayed its posters and brochures, sold lift tickets to attendants of ski club meetings in New York, and sent employees into New York to attend ski shows]; *Carte v Parkoff,* 152 AD2d 615 [1989] [solicitation of New York customers by listing a phone number in a New York telephone book is not transacting business within the meaning of CPLR 302 (a) (1) so as to sustain long-arm jurisdiction over defendant, a New Jersey dentist and resident, in an action commenced by a New York resident for dental malpractice]; *Hermann v Sharon Hosp.,* 135 AD2d 682 [1987] [Connecticut hospital not subject to personal jurisdiction in New York in medical malpractice action on

ground that hospital transacted business in New York, even though some of the hospital's doctors were licensed to practice in New York and a large number of the hospital's patients resided in New York, where hospital maintained no offices in New York, was licensed solely in Connecticut, and patient's treatment at hospital did not arise out of any transaction of business in New York]).

In addition to New York's reluctance to find long-arm jurisdiction in the absence of meaningful business transactions, other states with comparable long-arm statutes have refused to uphold jurisdiction on similar or analogous facts. For example, in *Hoekstra v Bose* (302 Ill App 3d 704, 707 NE2d 185 [1998]), the defendant, a resident of New York with an Illinois driver's license, was in an automobile accident in Michigan with the plaintiff, a Michigan resident. The defendant's car rental agreement authorized him to travel in Michigan among other states. The only ground for Illinois jurisdiction which the plaintiff raised was the existence of the defendant's Illinois driver's license. The Illinois court did not determine jurisdiction based on its long-arm statute.[2] Rather, the court found that even assuming that defendant's activities satisfied the long-arm statute, due process was not satisfied. As explained by the court, "minimum contacts and fair warning requirements are satisfied if the defendant either 'purposefully directed' his activities at Illinois residents, reached out beyond one state to create continuing relationships and obligations with citizens of another state; or purposefully derived benefit from his interstate activities" (302 Ill App 3d at 708, 707 NE2d at 188). Applying these criteria to the facts of *Hoekstra*, the court found that defendant's "possession of an Illinois driver's license does not constitute a purposeful direction of activity toward Illinois residents" and consequently concluded that the "personal injury action did not arise from the transaction of any business or any conduct on the part of [the defendant] within Illinois, but arose from [the defendant's] alleged negligent driving in the State of Michigan" (302 Ill App 3d at 708, 709, 707 NE2d at 188, 189).

Similarly, in Michigan,[3] conduct of a strictly personal nature is not considered to constitute the transaction of business. In

2. Illinois' long-arm statute (735 Ill Comp Stat 5/2-209 [a]) states in relevant part that: "Any person, whether or not a citizen or resident of this State, who in person . . . does any of the acts hereinafter enumerated, thereby submits such person . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts: (1) The transaction of any business within this State."

3. In Michigan, the long-arm statute (Mich Comp Laws Ann § 600.705) provides as follows: "The existence of any of the following relationships be-

*Moore v McFarland* (187 Mich App 214, 466 NW2d 309 [1990]), the plaintiff commenced a paternity action against nonresident defendant. The plaintiff argued that personal jurisdiction could be obtained based on the putative father's activities, particularly, making periodic phone calls and some support payments and visiting her once to discuss the child. The court found that the defendant's conduct was "of a strictly personal nature" and therefore did not constitute doing business (187 Mich App at 217, 466 NW2d at 310). Moreover, the court found that "the exercise of personal jurisdiction over defendant . . . does not comport with constitutional due process" as the plaintiff had demonstrated "[i]nsufficient minimum contacts" (187 Mich App at 218, 219, 466 NW2d at 310, 311).

New York also requires an "articulable nexus between the business transacted and the cause of action sued upon" (*Mc-Gowan v Smith,* 52 NY2d 268, 272 [1981]; *see also Talbot v Johnson Newspaper Corp.,* 71 NY2d 827, 829 [1988] [defendant must have been involved in "purposeful activities" in New York which were "substantial[ly] relat[ed]" to the suit]).

The type of activities contemplated by our long-arm statute as interpreted by our courts to invoke jurisdiction are simply not present here. I cannot agree that the mere facts that defendant had both a New York driver's license and auto registration at the time of the accident, even if considered purposeful acts, are in any way related to this out-of-state accident so as to create the necessary nexus to invoke long-arm jurisdiction. Moreover, even if defendant has the requisite "minimum contacts" with New York, "the New York long-arm statute . . . does not provide for in personam jurisdiction in every case in which due process would permit it" (*Talbot,* 71 NY2d at 829-830).

I would therefore affirm the order granting defendant's motion to dismiss.

·tween an individual or his agent and the state shall constitute a sufficient basis of jurisdiction to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships: (1) The transaction of any business within the state."